THE STATE v. CORNELIA DAVIS, Appellant.—295 S. W. 96.

Division Two, June 3, 1927.

**1. ASSIGNMENTS: General.** Assignments in the motion for a new trial in a criminal case that "the court erred in refusing proper and legal evidence offered by defendant, and in the admission of irrelevant and incompetent evidence for the State," and that "the court gave improper and illegal instructions" are vague and indefinite, and in view of new Section 4079 (Laws 1925, p. 198) cannot be considered in the appellate court.

**2. EVIDENCE: Sufficiency: Manslaughter.** The evidence in this case, in which appellant was convicted of manslaughter for shooting her husband, after they had quarreled and fought and he had thrown dishes at her, and after he had gone into another room, is set out at length, and, **Held,** sufficient to sustain a verdict of guilty.

Corpus Juris-Cyc. References: **Criminal Law,** 17 C. J., Section 3350, p. 89, n. 65.  **Homicide,** 30 C. J., Section 561, n. 316; n. 68.

Appeal from Circuit Court of City of St. Louis.—*Hon. Frank Landwehr,* Judge.

AFFIRMED.

*Roy A. Fish* and *William E. Fish* for appellant.

(1) The verdict is against the evidence as the *corpus delicti* was not proved.   There is no evidence that deceased died from a gunshot wound.   (2) The court erred in refusing legal evidence offered by the defendant.   (3) This is a case of self-defense and justifiable homicide.

*North T. Gentry,* Attorney-General, and *Claud Curtis,* Special Assistant Attorney-General, for respondent.

·(1)   Since this case was tried and the motion for new trial was filed after Section 4079, Laws 1925, p. 198, became a law, the assignments of error·in said motion are not specific enough and do not save anything for review, except possibly the sufficiency of the evidence: State v. Standifer, 289 S. W. 856; State v. Murrell, 289 S. W. 859; State v. Vesper, 289 S. W. 862.   (2)   The evidence was sufficient upon which to base the verdict of the jury.   State v. Keller, 281 S. W. 960; State v. Bowman, 294 Mo. 245; State v. Henke, 285 S. W. 392; State v. Hall, 231 S. W. 1001.

HENWOOD, C.—Appellant was charged by indictment with manslaughter (her husband being the victim of the alleged homicide), and upon trial the jury found her guilty and assessed her punishment at a fine of five hundred dollars and imprisonment in jail for one year.   After moving for a new trial without avail, she was sentenced in accordance with the verdict, and in due course was allowed an appeal to this court.

.· The motion for a new trial covers four *general* assignments of error, as follows·:

"1st.   That the verdict is against the law.

"2nd· The verdict is against the evidence.

"3rd.   The court erred in refusing proper and legal evidence on the part of the defendant, and permitted the State to introduce over objection of the defendant incompetent and irrelevant evidence.

"4th.   The court gave improper and illegal instructions."

Counsel for appellant, in their brief, mention only the insufficiency of the State's evidence and the exclusion of proper evidence offered by appellant as grounds for reversal, apparently abandoning the other assignments in the motion for new trial.

However, an examination of the motion at once discloses that the actions of the trial court complained of, in the admission and exclusion of evidence and in the instructions to the jury, are entirely too vague and indefinite to meet the requirements of new Section 4079 (Laws 1925, p. 198), which provides, among other things, that—"The motion for a new trial shall be in writing and must set forth *in detail* and *with particularity* in separate numbered paragraphs, the *specific grounds or causes* therefor."   (Italics ours.)

This court, in recent cases, has given life to this new statute by declaring the manifest intention of the Legislature in plain and unmistakable language.   It seems appropriate here to quote from the case of State v. Standifer, 289 S. W. 856.   Referring to the rather

317 Mo. Sup.—18.

common use of "shotgun" motions, BLAIR, J., speaking for the court, says in part:

"By new Section 4079 the Legislature has served notice upon the bar of the State that such practices are definitely at an end. Since said new Section 4079 became effective, it has become the duty of counsel for appealing defendants in criminal cases to be as fair with the trial court as he expects to be with the appellate court. The correlative duty on the part of appellate courts is to deny appellants in criminal cases the right of appellate review upon any point not specifically, in detail, and with particularity called to the attention of the trial court. The bar should take notice and the trial bench may rest assured that this court is prepared to and will enforce the manifest legislative intent in all appeals in criminal cases where the motions for new trial were filed after new Section 4079 went into effect."

Similar discussions of this subject and to the same effect may be found in the cases of State v. Murrell, 289 S. W. 859, and State v. Vesper, 289 S. W. 862.

Taking together two assignments of error in appellant's motion for new trial, namely, that the verdict is against the law and that the verdict is against the evidence, as fairly representing a challenge of the sufficiency of the evidence, we think this is the sole question for our consideration in this case.

Appellant admits that she shot her husband, Ferdinand Davis, at the time and place alleged but pleads self-defense in justification. There being no material conflict in the evidence, except as to the facts immediately surrounding the shooting, special reference to those facts only is deemed sufficient.

At the time of this unfortunate occurrence appellant was about forty years of age and her husband about forty-six, and they had been married for about twenty-two years. They lived at 2326 Walnut Street in the city of St. Louis, Missouri, where appellant conducted a rooming house. Davis used intoxicants and gambled, and at times displayed a turbulent, fighting disposition. He had assaulted her many times before, once cutting her arm with a knife and on another occasion shot at her twice, but was never prosecuted at her instance. A couple of years before he was charged with first degree murder in St. Louis. In the afternoon of this fatal day, October 16, 1925, Davis engaged in a stud poker game with two other men in the kitchen of the Davis house. He lost steadily, exhausting his own funds and several loans of money from appellant. Already embittered by his losses, seemingly, he was provoked to an open display of anger toward appellant when she asked to be dealt a hand in the game, suggesting it might change his luck and further suggesting that he could not win playing mad cards. So angered, he called her a "black bitch,"

and, saying he would "crack her head," threw a whiskey or soda-water bottle across the table which missed her. His attempt to throw another bottle at her was blocked by a spectator, and then appellant "commenced to get rough," making it necessary to hold them apart. This broke up the poker game and caused the players and other roomers and visitors to leave the scene of action, some leaving the house and others going to other parts of the house.

At this juncture the State's evidence tends to show that Davis went into a little bedroom at the side of the kitchen and fastened the door, and that appellant went to the front room, but returned promptly with "her gun," and tried to "get to him" in the little bedroom; that failing to gain entrance through the door she went through "a little side hall and around to the back," and failing to "get in there" she came back to the kitchen; that shortly thereafter, roomers and others in the house heard "shots fired," in the kitchen, and the first one to investigate found Davis lying on the floor in the little bedroom between the bed and partition, and appellant nearby with a pistol in her hand; that Davis explained the trouble to a police officer a few minutes later by saying, in the presence of appellant, "Well, we had a misunderstanding and had a fight and she shot me;" that sometime before the trial appellant's mother visited with one of the State's witnesses and asked her to say at the trial that Davis threw dishes at appellant.

Appellant testified that following the mix-up in the poker game Davis went into the little bedroom, and she remained in the kitchen; that he kept on quarreling and that she latched the door on the outside and laughed at him; that he burst the door open, breaking the latch, rushed into the kitchen and grabbed and threw at her a glass salad bowl, saying he would "knock her brains out;" that at this time she and the woman with her in the kitchen ran into the hallway leading from the kitchen to the front part of the house; that she went to the dining room on the opposite side of the hall from the kitchen and got her pistol, where she kept it between the telephone and buffet; that she returned with her pistol to the dining room door, and then, using her words, "He was making to me and after I shot him he made it back in the room and sat down by the side of the bed;" and further, "And I shot him right at the china closet. You see, I have another china closet; I was scared he was going to grab those things, and when he went to raise his right hand up to reach over on the china closet out in the hall I made the shot. You see, he was coming to me and when he raised his hand and he seen I was going to shoot he turned sideways, and that made it go to the right and come to his left arm;" and appellant further testified that Davis was about seven feet away from her when she shot him.

One witness for appellant supported her testimony as to what happened just prior to the shooting, that is, as to Davis bursting open the door between the little bedroom and the kitchen and throwing the salad bowl at appellant; also, as to appellant going into the dining room as they both ran from the kitchen.

No witness at the trial testified to seeing the shooting.

The evidence on both sides tends to show that appellant could have left her husband in the little bedroom to finish his quarrel alone and found safe refuge from his wrath, but she felt equal to the occasion, without calling for help or protection from her roomers or other persons in the house and near at hand.

An examination of Davis showed that he had a gunshot wound just above and to the right of his navel, and that a metallic bullet penetrated his abdominal cavity, entering at the point mentioned and coming out on his left side. He died December 10, 1925, of general peritonitis, and this prosecution was instituted in the Circuit Court of the City of St. Louis within a few weeks thereafter.

The testimony of two physicians, one who attended Davis at the hospital and another who made a *post-mortem* examination, tends to show that the gunshot wound was the direct and producing cause of general peritonitis, which resulted in his death.

The evidence clearly establishes the *corpus delicti* and it is amply sufficient to support the verdict. [State v. Henke, 285 S. W. 392.] We find no error in the record proper.

It follows that the judgment should be affirmed and it is so ordered. *Higbee* and *Davis, CC.,* concur.

PER CURIAM:—The foregoing opinion by HENWOOD, C., is adopted as the opinion of the court. All of the judges concur.