**2013 UT App 245**

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Plaintiff and Appellee,
*v.*
GUSTAVO DEMETRIO GARRIDO,
Defendant and Appellant.

Opinion
No. 20100789-CA
Filed October 10, 2013

Third District, Salt Lake Department
The Honorable Randall N. Skanchy
No. 101902111

Ronald Fujino, Attorney for Appellant
John E. Swallow and John J. Nielsen, Attorneys for
Appellee

JUDGE GREGORY K. ORME authored this Opinion, in which
JUDGES CAROLYN B. MCHUGH and J. FREDERIC VOROS JR.
concurred.

ORME, Judge:

¶1    Defendant Gustavo Demetrio Garrido appeals from convictions for one count of assault, a third degree felony, *see* Utah Code Ann. § 76-5-102 (LexisNexis 2012); five counts of domestic violence in the presence of a child (three third degree felonies and two class B misdemeanors), *see id.* § 76-5-109.1(2), (3); one count of aggravated burglary, a first degree felony, *see id.* § 76-6-203; one count of aggravated kidnapping, a first degree felony, *see id.* § 76-5-302; one count of aggravated assault, a third degree felony, *see id.* § 76-5-103 (2008);[1] and one count of violating a protective

---

1. Because changes have been made to the aggravated assault statute since the crimes were committed, we cite to the version in

(continued...)

order, a class A misdemeanor, *see id.* § 76-5-108 (2012).[2] Defendant argues that (1) this court improperly remanded his case back to the trial court to supplement the record, (2) the trial court erred in determining that a witness was unavailable and subsequently violated his Sixth Amendment rights by permitting preliminary testimony to be admitted, (3) the trial court admitted irrelevant and prejudicial hearsay statements, (4) the trial court failed to adequately inquire into Defendant's request for new counsel, and (5) the trial court improperly instructed the jury by failing to merge some of the offenses. We affirm.

BACKGROUND[3]

¶2     During a separation from his on-again-off-again girlfriend (Girlfriend), Defendant dated the primary victim (Victim) in this case. By December 2009, Victim was several months pregnant with Defendant's child, but Defendant had left Victim and moved back in with Girlfriend. Victim and Defendant remained in contact as Victim's due date approached. Shortly after Christmas, Defendant went to Victim's house, where she was home with her two children, and asked her for a key to her house. She refused, and Defendant "started punching her in the ribs and in the back of the head," "over and over again." Defendant told Victim to "stay put" or else he would "fuck the house up." Victim called the police once

---

1. (...continued)
effect at the time of the commission of the crimes. No changes have been made to the other relevant statutes, so we otherwise cite the current version of the Utah Code as a convenience to the reader.

2. The first degree felonies vested the Utah Supreme Court with initial jurisdiction over this appeal. *See* Utah Code Ann. § 78A-3-102(3)(i) (LexisNexis 2012). The Supreme Court transferred the case to this court. *See id.* § 78A-3-102(4).

3. We outline the facts in the light most favorable to the jury's verdict. *See State v. Kohl*, 2000 UT 35, ¶ 2 n.1, 999 P.2d 7.

Defendant left, but he could not be located. Victim suffered a head injury and bruises on her ribs and back.

¶3 About a week later, Defendant returned to Victim's house late at night. Using a key he took without permission during the previous incident, he entered the house and demanded to see Victim's phone, accusing her of having someone else staying in her home. When she refused to turn over her phone, he threatened to kill her and grabbed a knife from the kitchen. Holding the knife to her throat, he again threatened to kill her. Defendant "grabbed her by the hair[,] threw her to the ground," and "began to jump up and down on her face," hitting her repeatedly and continuing to threaten her with the knife. Defendant also punctured the back of her hand with the knife. After he finished beating her, Defendant stayed the night, refusing to let Victim out of his sight and telling her that he would kill her if she tried to leave. Victim's two children were in the home during the incident, as was another child. Early the next morning, Victim was able to flee to her neighbor's house, and the police were called. Defendant, however, fled before they arrived. The police officers found Victim with scrapes on her forehead, shoe marks on her face, a puncture wound on her hand, and bruises on her arm. Defendant was eventually located and charged with multiple offenses, and a preliminary hearing was scheduled in due course.

¶4 A protective order was entered against Defendant in favor of Victim. Despite this order, and shortly before the first scheduled preliminary hearing, Defendant called Victim from jail and told her that the case against him would be dismissed if no one showed up to testify against him. Victim failed to appear both at that scheduled hearing and the next one. She contacted the prosecutor by phone, insisting that she just wanted the charges to "go away" and stating, "I'm not going to testify if you can't guarantee that you won't put [Defendant] away for life. I don't want to be looking over my shoulder for the rest of my life." The prosecutor used a speakerphone, and the conversation was overheard by a paralegal.

¶5 The third time the preliminary hearing was scheduled, Victim finally appeared. She testified that she did not remember

many of the events that were the source of Defendant's charges, and the details she did remember often contradicted statements she had made to police. Defendant's counsel was given the opportunity to cross-examine Victim but elected not to do so.

¶6    Victim had been extremely uncooperative and had attempted to avoid service multiple times. Once the case moved to trial, the trial court granted the State's request to admit Victim's preliminary hearing testimony at trial should she fail to appear, as had been her frequent practice. The trial court agreed that under those circumstances it would also admit the paralegal's testimony regarding Victim's statements to the prosecutor. As expected, Victim was not present at trial when called to testify, and the trial court found that she was unavailable. However, just as her testimony from the preliminary hearing was about to be read aloud by a stand-in, Victim appeared in the back of the courtroom, shouted that she refused to testify, and fled from the courtroom. The stand-in then read Victim's preliminary hearing testimony.

¶7    Defendant was convicted by the jury and sentenced by the trial court.[4] This appeal followed, in the course of which we remanded for supplementation of the record.

ISSUES AND STANDARDS OF REVIEW

¶8    Defendant first argues that we improperly remanded this case for supplementation of the record under rule 11 of the Utah

---

4. Defendant was sentenced to prison for one term of zero to five years for assault, two terms of 365 days for the misdemeanor domestic violence in the presence of a child convictions, three terms of zero to five years for the felony domestic violence in the presence of a child convictions, one term of fifteen years to life for aggravated kidnapping, one term of zero to five years for aggravated burglary, one term of zero to five years for aggravated assault, and one term of 365 days for violation of a protective order. The trial court directed that the sentences run concurrently.

Rules of Appellate Procedure. A decision to remand for supplementation of the record is a matter entrusted to our sound discretion. *See, e.g., Stone Flood & Fire Restoration, Inc. v. Safeco Ins. Co. of Am.*, 2011 UT 83, ¶ 22 n.5, 268 P.3d 170; *Pratt v. Nelson*, 2005 UT App 541, ¶ 5 n.2, 127 P.3d 1256.

¶9 Second, Defendant argues that Victim's preliminary hearing testimony was improperly admitted at trial. Defendant alleges that the trial court did not make adequate findings to support a determination that Victim was unavailable. "'The failure to enter adequate findings of fact on material issues may be reversible error.'" *Keene v. Bonser*, 2005 UT App 37, ¶ 5, 107 P.3d 693 (alteration omitted) (quoting *Reid v. Mutual of Omaha Ins. Co.*, 776 P.2d 896, 899 (Utah 1989)). "Failure of the trial court to make findings on all material issues is reversible error unless the facts in the record are clear, uncontroverted, and capable of supporting only a finding in favor of the judgment." *Stonehocker v. Stonehocker*, 2008 UT App 11, ¶ 16, 176 P.3d 476 (citation and internal quotation marks omitted). Defendant also argues that the admission of Victim's preliminary hearing testimony violated his Sixth Amendment right to confrontation. Whether a defendant's confrontation rights have been violated is a question of law, reviewed for correctness. *State v. Poole*, 2010 UT 25, ¶ 8, 232 P.3d 519. Defendant also contends that his trial counsel was ineffective for failing to cross-examine Victim at the preliminary hearing. Ineffective assistance of counsel claims that are raised for the first time on appeal present questions of law, reviewed for correctness. *State v. Clark*, 2004 UT 25, ¶ 6, 89 P.3d 162.

¶10 Third, Defendant argues that the trial court improperly admitted Victim's hearsay statements through a paralegal who worked in the prosecutor's office. "When reviewing rulings on hearsay, we review '[l]egal questions regarding admissibility . . . for correctness, . . . questions of fact . . . for clear error,' and the final 'ruling on admissibility for abuse of discretion.'" *State v. Jackson*, 2010 UT App 328, ¶ 9, 243 P.3d 902 (alteration and omissions in original) (quoting *State v. Rhinehart*, 2006 UT App 517, ¶ 10, 153 P.3d 830). Defendant also contends that trial counsel was ineffective for not keeping this evidence out and for not requesting

a limiting instruction focused on this evidence. As just noted, ineffective assistance of counsel claims raised for the first time on appeal present questions of law that we review for correctness. *Clark*, 2004 UT 25, ¶ 6.

¶11     Fourth, Defendant asserts that the trial court failed in its duty to adequately inquire into Defendant's request for new counsel. "Whether a trial court should have inquired further into a defendant's dissatisfaction with counsel is reviewed for an abuse of discretion." *State v. Hall*, 2013 UT App 4, ¶ 8, 294 P.3d 632.

¶12     Finally, Defendant argues that the jury instructions were improper. His argument centers on questions related to merger. "Because merger questions are legal in nature, we review them for correctness." *State v. Lee*, 2006 UT 5, ¶ 26, 128 P.3d 1179.

ANALYSIS

I. Remand and Record Supplementation

¶13     After Defendant filed his opening brief in this appeal, the State moved to stay the proceedings so that the record could be supplemented under rule 11 of the Utah Rules of Appellate Procedure. Rule 11 states:

> If any difference arises as to whether the record truly discloses what occurred in the trial court, the difference shall be submitted to and settled by that court and the record made to conform to the truth. If anything material to either party is omitted from the record by error or accident or is misstated, the parties by stipulation, the trial court, or the appellate court, either before or after the record is transmitted, may direct that the omission or misstatement be corrected and if necessary that a supplemental record be certified and transmitted.

Utah R. App. P. 11(h). The transcript omitted the declarations Victim made from the gallery and did not document her swift exit from the courtroom. Some of the comments made in a sidebar conference regarding Victim's availability were also transcribed as "inaudible." The State moved to make a more complete appellate record of these events. Defendant opposed the motion, but this court granted it. The case was remanded to the trial court, and a hearing was held.

¶14    At the hearing, the trial court heard from Defendant's trial counsel, the prosecutors, and a bailiff who had been present at the trial. The trial court also stated for the record its own recollection of the events. While there were some minor discrepancies in the recollections, everyone indicated that Victim had appeared in the middle of the proceedings, yelled from the gallery that she would not testify, and then left. The bailiff who had been sent after her when she left the courtroom testified that he went to the elevators to find her but she was nowhere to be seen.

¶15    On appeal, Defendant merely repeats the same arguments he made in opposing the rule 11(h) remand. We have already considered and rejected these exact claims in granting the requested remand, and therefore see no need to revisit them, especially given the "law of the case" doctrine. *See IHC Health Servs., Inc. v. D&K Mgmt., Inc.*, 2008 UT 73, ¶ 26, 196 P.3d 588. We were well within our discretion under rule 11(h) to remand the case so that the record could more fully reflect the omitted events that led to Victim's preliminary hearing testimony being read as a substitute for her live testimony at trial.[5] *See* Utah R. App. P. 11(h).

---

5. Defendant argues alternatively that "even if the witness's supplemental statement became part of the record, such a supplementation cannot make up for the lower court's failure to establish findings of fact and conclusions of law on the record below." We disagree. The court on remand specifically asked Defendant's appellate counsel at the supplementation hearing if counsel wanted findings to be made, and Defendant's appellate

(continued...)

## II. Sixth Amendment Rights

¶16 Defendant argues that the trial court did not make adequate findings to support a determination that Victim was unavailable and that his Sixth Amendment rights were subsequently violated when Victim's preliminary hearing testimony was admitted. Defendant also argues that his trial counsel was ineffective for failing to cross-examine Victim at the preliminary hearing.

¶17 Prior testimony, such as that offered at a preliminary hearing, is admissible when a witness is found to be unavailable. Utah R. Evid. 804(b)(1). A witness is unavailable when, among other circumstances, the witness "refuses to testify" or "is absent from the trial or hearing and the statement's proponent has not been able, by process or other reasonable means, to procure the [witness's] attendance." *Id.* R. 804(a). We conclude that Victim was unavailable. Victim persistently refused to testify prior to trial, was resistant to service, and was absent when called. The trial court made a finding that Victim was unavailable and asked that a stand-in witness come forward to read Victim's preliminary hearing testimony. Although Victim then suddenly appeared, she did so only to shout from the gallery that she would not be testifying. A bailiff went after her when she then fled the courtroom, but she had already disappeared. The trial court's statement—"I'm not going to continue with this charade. We're just going to take her testimony as it's written."—appears to be a simple affirmation of its prior, formal ruling of unavailability. But even if it was not, the "clear, uncontroverted" facts support a determination that she was not available to testify. *See Stonehocker v. Stonehocker*, 2008 UT App 11, ¶ 16, 176 P.3d 476 (citations and internal quotation marks omitted). Victim was absent for all but a brief moment of the trial, during which she refused to take the stand and then fled. It was, therefore, not error for the court to determine Victim was unavailable because she "refus[ed] to testify" and was "absent

---

5. (...continued)
counsel replied, "No." Thus, if the failure to make findings was an error, it was invited, and we will not consider it further. *See Pratt v. Nelson*, 2007 UT 41, ¶ 17, 164 P.3d 366.

from the hearing," and on that basis to admit her preliminary hearing testimony into evidence.

¶18    Defendant argues that even if Victim was unavailable, his Sixth Amendment rights were still violated. "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. *But see State v. Timmerman*, 2009 UT 58, ¶¶ 13, 16, 218 P.3d 590 (noting that there is no constitutional right to confrontation of witnesses at preliminary hearings). However, when a witness is unavailable, preliminary hearing testimony is admissible in a criminal trial if the defendant had a prior opportunity to cross-examine the witness. *Crawford v. Washington*, 541 U.S. 36, 68 (2004). Defendant argues that he was denied his Sixth Amendment rights because trial counsel did not ask Victim any questions on cross-examination at the preliminary hearing. However, "[i]t is the *opportunity* to cross-examine that is guaranteed by the state and federal constitutions, not whether that opportunity is exercised." *State v. Nelson*, 725 P.2d 1353, 1357 (Utah 1986) (emphasis added). While "[d]efense counsel may have elected to forego cross-examination[,] . . . that does not mean that the opportunity was not available." *Id.*

¶19    Defendant's trial counsel was given three different opportunities to cross-examine Victim at the preliminary hearing but declined to do so—almost certainly because the testimony elicited by the prosecution from Victim was favorable to Defendant as she recanted many of her previous allegations against him and claimed to have forgotten about the relevant incidents. *See State v. King*, 2010 UT App 396, ¶ 49, 248 P.3d 989 ("[A]ttorneys may opt to forego cross-examination of witnesses for valid strategic reasons."); *State v. Strain*, 885 P.2d 810, 815–16 (Utah Ct. App. 1994) (holding counsel's decision to forego cross-examination of witness was "within the range of legitimate trial strategies" because testimony was favorable to the defendant and further probing "would not only be fruitless but also potentially harmful"). Indeed, in an exchange with Defendant's counsel at trial, the court stated, "[Y]ou chose not to cross-examine [Victim at the preliminary hearing] because [her testimony] was favorable to your client," and trial counsel responded, "On that, on those issues, yes."

¶20    We conclude that it was the opportunity to cross-examine Victim, not the actual undertaking of cross-examination, that satisfied the requirements of *Crawford*. While Defendant has assailed trial counsel's refusal to cross-examine Victim at the preliminary hearing, we determine that it was a logical and routine choice, made to avoid to avoid the possibility of disturbing favorable testimony. Defendant's Sixth Amendment rights were not violated when the preliminary hearing testimony was admitted because Defendant was provided the requisite opportunity for cross-examination at that stage of the proceedings.

¶21    Under these circumstances, we conclude that Defendant's trial counsel was not ineffective. Counsel is ineffective if his performance is both deficient and prejudicial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In order to prove deficient performance, "the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). As we have just discussed, a decision to forego cross-examination may be a legitimate strategy, and it is one that is easily justified on the record before us. Therefore, we cannot agree that Defendant's trial counsel was ineffective for declining to cross-examine Victim after she offered testimony that was favorable to Defendant.

¶22    Defendant also argues that the preliminary hearing testimony lacks the necessary constitutional protections of the Sixth Amendment because certain evidence was not discovered by trial counsel until after the preliminary hearing. Specifically, trial counsel became aware of Victim's prior criminal convictions, vindictive statements Victim made about Defendant to the effect that she may have set him up or falsified charges against him, and other credibility and character evidence that trial counsel asserted he would have questioned her on during cross-examination had he known about it. However, even if the evidence discovered after the preliminary hearing means the preliminary hearing testimony was not as complete as it might have been, we conclude that any dereliction on counsel's part did not prejudice Defendant. Counsel introduced the vindictive statements and attacked Victim's credibility through another witness at trial, and the jury learned of

Victim's convictions through a stipulation. Although it may have been more convenient for Defendant had trial counsel discovered the evidence sooner, Defendant was not harmed by counsel's ignorance of this information at the preliminary hearing because the evidence was discovered in time to be used at trial.

## III. Hearsay Statements

¶23 The State made a motion at trial to admit the out-of-court statements made by Victim to the prosecutor that were overheard on speakerphone by a paralegal. The trial court admitted the statements over Defendant's objections under the state-of-mind exception found in rule 803 of the Utah Rules of Evidence. Defendant argues that the admission of these statements violated Defendant's Sixth Amendment rights to confrontation. "[N]ontestimonial hearsay can be admitted under generally accepted exceptions to the hearsay rule without running afoul of the Sixth Amendment." *Salt Lake City v. Williams*, 2005 UT App 493, ¶ 14, 128 P.3d 47. "The focus of the Confrontation Clause is on witnesses who bear testimony against the accused." *Id.* ¶ 15. Here, Victim's statements were not accusatory nor did they amount to bearing witness against Defendant. The statements repeated by the paralegal were simply declarations of Victim's intention not to testify, with reference to her fear of Defendant as a reason for not doing so.

¶24 Defendant argues that limiting instructions are a per se requirement to admitting out-of-court statements regarding the fear a victim has of a defendant. It is true that in homicide cases when a deceased victim's mental state is not directly at issue, a limiting instruction must be given before statements related to a victim's state of mind or his or her fear of the defendant can be admitted. *State v. Wetzel*, 868 P.2d 64, 68–69 (Utah 1993); *State v. Auble*, 754 P.2d 935, 937 (Utah 1988). And when a curative instruction is not deemed to be sufficient to overcome the potential for prejudice, the out-of-court statements simply will not be admitted. *Wetzel*, 868 P.2d at 68–69; *Auble*, 754 P.2d at 937. However, this case does not involve a homicide, and the statements were not related to Victim's state of mind at or near the time of the attack.

¶25    Further, out-of-court statements related to a victim's state of mind are admissible when a victim's mental condition is at issue in the trial or is "relevant to prove or explain her subsequent acts or conduct." *See State v. Wauneka*, 560 P.2d 1377, 1379 (Utah 1977). That is the situation presented here. Victim's out-of-court statements regarding her fear of Defendant were admitted to explain her subsequent behavior. Victim was consistently uncooperative with the prosecution, and shortly after making her out-of-court statements to the prosecutor, she appeared at a preliminary hearing where she offered testimony that directly contradicted statements she had made to the police at the time of the attacks. Because Victim's credibility had become an issue at trial, it was not error for the trial court to admit nontestimonial out-of-court statements that would provide an explanation for her inconsistent statements and her failure to appear.

¶26    Nor was trial counsel ineffective for failing to request a limiting instruction concerning the out-of-court statements. Choosing to forgo a limiting instruction can be a reasonable decision to avoid drawing attention to unfavorable testimony. *See State v. Harter*, 2007 UT App 5, ¶ 16, 155 P.3d 116 (holding failure to request limiting instruction was not ineffective assistance of counsel because such an instruction could have drawn the jury's attention to the defendant's flight from police officers). A limiting instruction here could have drawn the jury's attention to Victim's fear of Defendant, and we thus readily conclude that it was not ineffective for counsel to opt not to request such an instruction. Defendant has not "overcome the presumption that . . . the challenged action 'might be considered sound trial strategy.'" *See Strickland v. Washington*, 466 U.S. 668, 690 (1984) (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

IV. Trial Court's Inquiry into Request for New Counsel

¶27    Four days before his trial was to begin, Defendant expressed concern about his counsel's performance. The trial court requested a written motion, and Defendant provided one. Defendant's handwritten motion to the judge explained that he was concerned about the violation of his right to confrontation and that he had not known he could have cross-examined Victim at the preliminary

hearing. He expressed displeasure with counsel's decision not to ask Victim any questions at the preliminary hearing. The trial court read the motion and then responded to Defendant's concern this way: "I think what [this motion] is telling me is that at the preliminary hearing you felt like you were denied your right of confrontation and that is because your counsel didn't ask any questions of the witnesses called by the State, in this case the victim . . . . [I]s that correct?" Defendant replied that it was. The trial court explained to Defendant that he had had an opportunity for cross-examination. The trial court then asked, "Now, having said all that with a recanting witness saying [the attacks] didn't happen and that you didn't do it, what more would you ask them?" Defendant replied that he would have asked Victim "why she felt that she did these things against me or said these things against me." The trial court denied Defendant's motion for new trial counsel, explaining,

> The reason and basis for the denial is the right to confrontation did exist[6] and a trial tactic associated with asking what turns out to be a friendly witness, cross examination questions to cause her to recant from the recantation she's already made, would be not only ill advised but not something that a competent lawyer would undertake to do.

¶28 When an indigent defendant expresses dissatisfaction with his appointed attorney, the trial court must make "some reasonable, non-suggestive efforts to determine the nature of the defendant's complaints" and inquire sufficiently to "determine whether the defendant's relationship with his or her appointed attorney has deteriorated to the point that sound discretion requires substitution or even to such an extent that his or her Sixth Amendment right to counsel would be violated but for substitution." *State v. Pursifell*, 746 P.2d 270, 273 (Utah Ct. App.

---

6. The trial court apparently misspoke in referring to "the right to confrontation," per se, as opposed to the opportunity for cross-examination. Neither the Utah nor federal confrontation clause applies at preliminary hearings. *See State v. Timmerman*, 2009 UT 58, ¶¶ 13, 16, 218 P.3d 590.

1987). "[P]erfunctory questioning is not sufficient," and a trial court's inquiry will generally meet the standard if it unearths the specific, rather than general, concern a defendant has about his counsel's performance. *Id.* Here, the trial court inquired into Defendant's request by asking for a written motion and then repeating back to Defendant the trial court's interpretation of the concern to make sure the court understood it fully. Once the court was assured it understood Defendant's specific concern, it then explained the applicable legal concepts and inquired as to what Defendant would have asked Victim had he fully understood his right to cross-examine her at the preliminary hearing. This kind of thoughtful inquiry certainly meets the "reasonable, non-suggestive" standard. *See id.*

¶29 Substitute counsel is mandatory when a trial court's inquiry uncovers good cause, but absent such good cause, a decision to grant or deny a defendant's request for new counsel is discretionary. *Id.* at 272. Trial courts are afforded "particularly broad deference" when a motion for new counsel is made by a defendant "at the threshold of the trial." *State v. Vessey*, 967 P.2d 960, 962 n.1 (Utah Ct. App. 1998). Here, the court's inquiry uncovered no good cause for replacing counsel. Thus, we conclude that it was not an abuse of discretion for the trial court to deny Defendant's request for new counsel, made just four days before trial was to begin, when the conduct complained of was properly deemed to have been sound trial strategy.

## V. Merger

¶30 Defendant's final argument is that the jury instructions improperly allowed Defendant to be convicted of aggravated assault in addition to aggravated kidnapping and aggravated burglary. Although couched in terms of a challenge to the jury instructions, Defendant's argument is, at its core, an argument about merger. Defendant argues that his conviction for aggravated assault should be vacated because of the crime's statutory overlap with aggravated burglary and aggravated kidnapping.

¶31 A defendant may not be convicted "of both the offense charged and [a lesser] included offense. An offense is so included

when . . . [i]t is established by proof of the same or less than all the facts required to establish the commission of the offense charged." Utah Code Ann. § 76-1-402(3) (LexisNexis 2012). When "crimes standing in a greater-lesser relationship have multiple variations," we must "consider the evidence to determine whether that relationship existed between the specific variations of the crimes actually proved" at trial. *State v. Bradley*, 752 P.2d 874, 877 (Utah 1985). Even if there is overlap in the statutory elements, if the convictions rely on "materially different acts," then one crime will not be a lesser included offense of another. *See State v. Smith*, 2003 UT App 179, ¶ 16, 72 P.3d 692. In making this evaluation, we will view the evidence in the light most favorable to the jury's verdict. *State v. Sherard*, 818 P.2d 554, 557 (Utah Ct. App. 1991).

¶32    A conviction for aggravated burglary requires proof of burglary plus one of the following variations: (1) bodily injury, (2) the use or threatened use of a dangerous weapon, or (3) the possession or attempted use of a dangerous weapon or explosive. Utah Code Ann. § 76-6-203 (LexisNexis 2012). Aggravated assault, at the time of these events, required one of the following variations of assault: (1) attempting to do bodily injury with unlawful force or violence, (2) threatening to do bodily injury accompanied by a show of immediate force or violence, or (3) acting with unlawful force or violence and causing bodily injury or creating a substantial risk of bodily injury, plus the intentional infliction of serious bodily injury or the use of a dangerous weapon or other means likely to produce death or serious bodily injury. *Id*. § 76-5-102; *id*. § 76-5-103 (2008). The jury had before it evidence to support multiple variants of each crime. Indeed, there was enough evidence to support four separate aggravated assaults, but the State charged only one.[7]

---

7. The State contends there were four separate acts committed by Defendant that amounted to aggravated assault: (1) holding the knife to Victim's throat and threatening to kill her, (2) grabbing Victim by the hair and throwing her to the ground, (3) jumping up and down on Victim's face, and (4) stabbing Victim's hand with a knife.

¶33    Although Defendant used the same dangerous weapon, a knife, in the commission of each of his acts on that night, the jury was free to conclude, as we do viewing the facts in the light most favorable to its verdict, that there were at least three distinct occasions when the knife came into play. First, Defendant committed aggravated burglary when he unlawfully entered Victim's home with a stolen key and then remained there unlawfully while in possession of the knife. Second, Defendant committed aggravated assault when he threatened to kill Victim while armed with the knife. Third, hours later, Defendant committed aggravated kidnapping when he used the knife to hold Victim against her will. Because these convictions can be supported by "materially different acts," we conclude that it was not error for the trial court to conclude that aggravated assault was not a lesser included offense of aggravated burglary or aggravated kidnapping on the evidence before it. "Thus, the court was not required to instruct the jury on these concepts." *State v. Pierson*, 2000 UT App 274, ¶ 21, 12 P.3d 103.

¶34    Even without taking all of the knife's multiple uses into account, we still conclude that evidence exists that would support the jury's conclusion that Defendant was guilty of aggravated assault separate from aggravated burglary and aggravated kidnapping. The jury could easily have found Defendant guilty of aggravated burglary for entering Victim's home and grabbing the knife as an aid in unlawfully remaining in her home and then found him guilty of aggravated assault for throwing Victim to the ground and stomping on her head. And "[w]hen a kidnaping occurs under circumstances involving a charged companion criminal activity"—such as aggravated assault—if the "kidnaping was not 'merely incidental or subsidiary to [the companion] crime,'" separate convictions can be supported. *State v. Diaz*, 2002 UT App 288, ¶ 19, 55 P.3d 1131 (second alteration in original) (quoting *State v. Couch*, 635 P.2d 89, 93 (Utah 1981)). *See State v. Finlayson*, 2000 UT 10, ¶¶ 20–24, 994 P.2d 1243. Here, Defendant did not just hold Victim against her will as long as was necessary to complete any of the acts that could have constituted aggravated assault, but rather all night long. This extended detention "was not 'merely incidental'" to the aggravated assault, and separate

convictions were therefore warranted. *See Diaz*, 2002 UT App 288, ¶ 19.

¶35 Defendant argues that even though an objection to the jury instructions and an argument about the merger issues were not made below, any error can still be remedied under the doctrines of plain error, manifest injustice, or ineffective assistance of counsel. Because we determine that aggravated assault does not merge with aggravated kidnapping and aggravated burglary on the record before us, we conclude that the trial court was not required to give instructions suggesting otherwise and that no error existed, plain or otherwise. Thus, none of the doctrines suggested by Defendant to get around preservation problems are applicable and none of them require our further consideration.

CONCLUSION

¶36 Our remand of this case for supplementation of the record was proper. Victim's preliminary hearing testimony was not improperly admitted, because Victim was unavailable and because the testimony's admission did not violate Defendant's Sixth Amendment right to confrontation. The paralegal's statements were not erroneously admitted and did not violate Defendant's rights, nor was a limiting instruction related to the statements required. Trial counsel was therefore not ineffective for failing to request such an instruction. The trial court's inquiry into Defendant's alleged conflict with counsel was sufficient, and its denial of Defendant's request for new counsel was not an abuse of discretion. Finally, aggravated assault does not merge with Defendant's aggravated kidnapping and aggravated burglary convictions, and the trial court was therefore not required to give instructions suggesting otherwise to the jury.

¶37 Affirmed.

———————