2016 UT App 8

# THE UTAH COURT OF APPEALS

WEST VALLEY CITY,
Appellant,
*v.*
JAMES CHRISTIAN KENT,
Appellee.

Memorandum Decision
No. 20131057-CA
Filed January 14, 2016

Third District Court, Salt Lake Department
The Honorable Ann Boyden
No. 121905515

Ryan D. Robinson and Daniel R. Strong, Attorneys
for Appellant

L. Bruce Larsen, Attorney for Appellee

JUSTICE JOHN A. PEARCE authored this Memorandum Decision, in
which JUDGES STEPHEN L. ROTH and MICHELE M. CHRISTIANSEN
concurred.[1]

PEARCE, Justice:

¶1     West Valley City (the City) appeals from the district
court's order denying its motion in limine to admit the transcript
of an unavailable witness's preliminary hearing testimony. The
district court concluded that the unavailable witness's prior
testimony was not admissible under rule 804(b)(1) of the Utah

---

1. Justice John A. Pearce began his work on this case as a
member of the Utah Court of Appeals. He became a member of
the Utah Supreme Court thereafter and completed his work on
the case sitting by special assignment as authorized by law. *See
generally* Utah R. Jud. Admin. 3-108(3).

Rules of Evidence and that its admission would violate Defendant James Christian Kent's right to confront his accuser under the Sixth Amendment to the United States Constitution. We conclude that the district court erred in ruling, under Utah Rule of Evidence 804(b)(1)(B), that Defendant did not have a similar motive to develop the witness's testimony at the preliminary hearing and at trial. The district court also erred in the manner in which it analyzed two letters, allegedly written by the unavailable witness after her preliminary hearing testimony. Accordingly, we vacate the district court's order and remand the case for further consideration of the City's motion in limine.

¶2    At the preliminary hearing, Defendant's girlfriend (Victim) testified that she and Defendant had an "on and off" relationship. One day, Defendant and Victim were arguing in the garage of their shared residence. Defendant was upset Victim had visited him at the home of his other girlfriend (Girlfriend) at 1:00 a.m. the previous morning. Victim had gone to Girlfriend's house, where Girlfriend's parents also lived, to ask Defendant "to come home." According to Defendant, Victim's visit had caused Girlfriend's parents to become upset with Girlfriend.

¶3    Victim testified that during the argument, Defendant asked Victim a string of questions regarding how it made her feel "to go and tell [Girlfriend's] parents everything and [get] her in trouble." Victim responded by asking Defendant how she was supposed to feel with Defendant visiting Girlfriend and "going out on me?" Defendant then asked Victim, "[H]ow would it feel if he kicked the shit out of [Victim]?" Victim responded, "[D]o what you've got to do," not believing that Defendant would actually do it. Defendant kicked Victim in the head, making contact somewhere near Victim's eye. The impact gave Victim a black eye, turned her eyeball red and black, and created swelling sufficient to cause her eye to close completely.

¶4    The City charged Defendant with one count of assault. *See* Utah Code Ann. § 76-5-102 (LexisNexis 2012). At the preliminary hearing, Victim testified to the altercation, as described above. Victim also stated, among other things, that she was not the aggressor, that she did not approach Defendant during the argument, and that she was sitting in a chair when Defendant kicked her.

¶5    Defendant's counsel cross-examined Victim about the altercation. Counsel asked Victim, "[D]id you have a screwdriver in your hand at the time . . . he kicked you?" Victim responded, "No, sir. I didn't." Counsel asked Victim if Defendant "wanted to get that screwdriver out of your hand" and "kicked that screwdriver out of your hand and accidentally made contact with your face." Victim again responded, "I wasn't holding anything when he kicked me in my face." Defendant's counsel then asked Victim if, during the argument, Victim's face was near the ground. Victim responded that it was not and that she was sitting in a chair during the argument. Defendant's counsel also questioned Victim about the anticipated testimony of another witness to the argument. Specifically, counsel asked Victim whether she had blocked Defendant from leaving the garage prior to the assault. Victim disagreed with this characterization.

¶6    Although Defendant's counsel questioned Victim extensively at the preliminary hearing, the district court prevented him from pursuing certain lines of inquiry. Counsel asked whether Victim "threatened [Defendant] with scissors on one or more occasions," and whether she had "ever threatened [Defendant] with a pipe wrench." The City objected on relevance grounds. The court sustained the City's objection, stating that the boundaries of the preliminary hearing would be limited to the day of and the day before the altercation. Defendant's counsel also asked for "a little latitude" to explore Victim's criminal history because he had not yet received a response to a discovery request regarding Victim's criminal history. Counsel for the City

objected, stating that the evidence would be relevant at trial "if there is a self-defense claim raised," but was not relevant to the court's probable cause determination. The court allowed Defendant's counsel to inquire into crimes related to Victim's veracity and truthfulness. The court also permitted questioning about crimes or alleged crimes occurring within approximately twenty-four hours of the altercation but otherwise sustained the City's objection, stating that Defendant could acquire information outside of these two categories through "a discovery request." At the end of the preliminary hearing, the district court concluded that probable cause existed to believe that Defendant committed the crime charged and bound Defendant over for trial.

¶7 At a final pre-trial hearing, it became apparent to the parties that Victim would likely not appear at trial. The court had received two letters, purportedly written by Victim, asking the court to drop the charges against Defendant. The first letter states that Victim "wish[ed] to withdraw [her] statements . . . made the night of the incident and in court" because she had "made false accusations" and asks that all proceedings against Defendant be dropped. The second letter, which is notarized, again asks that all charges be dropped but does not contain the prior letter's reference to "false accusations."

¶8 The day before trial, the City filed a motion in limine to declare Victim unavailable and to admit her preliminary hearing testimony at trial. The morning of trial, the parties disagreed on the admissibility of Victim's testimony under rule 804 of the Utah Rules of Evidence and whether the admission of the testimony would violate the Confrontation Clause of the Sixth Amendment to the United States Constitution. Defendant's counsel argued that Victim's testimony was inadmissible because he was prevented from inquiring into "multiple instances of domestic violence or assaultive behavior of [Victim]." The district court denied the City's motion in limine and ruled that the preliminary hearing testimony was

inadmissible under rule 804 and that its admission would violate Defendant's Confrontation Clause rights.[2]

¶9    The court ruled that Victim was unavailable for purposes of rule 804, *see* Utah R. Evid. 804(a)–(b), but concluded that rule 804(b)(1) was not satisfied in light of Defendant's lack of opportunity and similar motive to develop Victim's testimony through direct, cross-, or redirect examination at the preliminary hearing, *see id.* R. 804(b)(1)(B). The court determined that Defendant lacked a motive to develop Victim's testimony at the preliminary hearing in large part due to the inherent differences between a trial and a preliminary hearing to determine probable cause. And the court found that Defendant's opportunity "was limited by [the prior judge's] sustaining of objections when anything went beyond the scope of the preliminary hearing"; by Defendant's inability to present testimony related to potential affirmative defenses, "specifically prior incidents, the threats, the screwdrivers"; and by the prior judge's limiting of Defendant's questioning "to the time frame immediately preceding" the altercation. The court also concluded that Defendant's cross-examination "simply was not sufficient" to satisfy Defendant's Confrontation Clause rights, in part because "the defense was not able to fully attack or even completely attack the prosecution's evidence or to look to presenting any affirmative defenses."

¶10    The court also addressed the recantation statements Victim allegedly made in the letters and ruled that "even though [they] did not rise to the level of being admitted . . . in trial," they were the "biggest reason why . . . there was [not] sufficient examination at the preliminary hearing on that issue to allow it to come in unchallenged." Because the district court denied its motion in limine, the City concluded that it had insufficient

_____

2. The judge presiding over the trial proceedings had not presided over the earlier preliminary hearing.

evidence to proceed and the case was dismissed. The City appeals.

¶11    The City contends that the district court erred by concluding that Victim's preliminary hearing testimony did not satisfy rule 804 of the Utah Rules of Evidence and that its admission would violate Defendant's Confrontation Clause rights. We review the district court's evidentiary ruling for an abuse of discretion. *See State v. Workman*, 2005 UT 66, ¶ 10, 122 P.3d 639 ("[W]e review the district court's ruling on admissibility [of hearsay evidence] for abuse of discretion."). The court's ruling under the Confrontation Clause is a question of law, reviewed for correctness. *State v. Garrido*, 2013 UT App 245, ¶ 9, 314 P.3d 1014.

¶12    Utah Rule of Evidence 804(b)(1) provides an exception for hearsay evidence where the declarant is unavailable and has previously provided testimony in certain trial and pre-trial proceedings. *See* Utah R. Evid. 804(b)(1); *see also id.* R. 804(a). Rule 804(b)(1) has three elements. First, the declarant must be "unavailable." *Id.* R. 804(b); *see also id.* R. 804(a). Second, the testimony of the unavailable declarant must have been "given as a witness at a trial, hearing, or lawful deposition." *Id.* R. 804(b)(1)(A). Third, the testimony must be "offered against a party who had . . . an opportunity and similar motive to develop it by direct, cross-, or redirect examination." *Id.* R. 804(b)(1)(B).

¶13    The Sixth Amendment's Confrontation Clause[3] provides, "In all criminal prosecutions, the accused shall enjoy the right . . .

---

3. On appeal, the City supports its Confrontation Clause argument with cases interpreting the confrontation clauses of the Utah and United States Constitutions. The City does not, however, make a separate argument based upon the Utah Constitution, and the district court's ruling relied on the Confrontation Clause of the Sixth Amendment to the United

(continued…)

to be confronted with the witnesses against him." U.S. Const. amend. VI. When out-of-court testimonial statements, including "prior testimony at a preliminary hearing," are offered against a defendant at trial, "the [Confrontation Clause] demands what the common law required: unavailability and a prior opportunity for cross-examination." *Crawford v. Washington*, 541 U.S. 36, 68 (2004).

¶14    The City first argues the district court erred by holding that Defendant did not have a similar motive to examine Victim at the preliminary hearing as at trial. The district court seemed to conclude that Defendant lacked sufficient motive to develop Victim's testimony at the preliminary hearing because Defendant's ability to question Victim was narrower in scope than an examination he likely would have been afforded at trial. As one example, the court highlighted that Defendant lacked a motive at the preliminary hearing to question Victim about the post-hearing statements allegedly made by Victim in the letters. The district court reasoned that the differences between a preliminary hearing and a trial give rise to a different motivation to develop witness testimony in each proceeding. In reaching this conclusion, the district court failed to credit the Utah Supreme Court's holding in *State v. Brooks*, 638 P.2d 537 (Utah 1981).

¶15    In *Brooks*, the supreme court rejected the defendants' argument that "by its very nature a preliminary hearing is

_____

(…continued)
States Constitution, as interpreted by *Crawford v. Washington*, 541 U.S. 36, 68 (2004). "[I]n keeping with our preservation policy, a state constitutional law argument must be raised in the trial court, preserved through the appellate process, and adequately briefed to us." *State v. Worwood*, 2007 UT 47, ¶ 18, 164 P.3d 397. Accordingly, we review the parties' arguments under only the Sixth Amendment's Confrontation Clause.

different in motive and interest than a trial." *Id.* at 541. The defendants in *Brooks* argued that at a probable cause hearing, "[t]he prosecution does not bear the burden of proving the crime 'beyond a reasonable doubt' as in a trial," "[t]he evidentiary and procedural rules are relaxed," and the forum "is limited to a determination of probable cause as a screening device." *Id.* Despite recognizing the fundamental differences between the two proceedings, the supreme court concluded, "Defense counsel's motive and interest are the same in either setting; he acts in both situations in the interest of and motivated by establishing the innocence of his client." *Id.* The court determined, "[C]ross-examination takes place at preliminary hearing and at trial under the same motive and interest." *Id.*

¶16 Despite the supreme court's instruction in *Brooks*, the district court relied on the differences between a preliminary hearing and trial and the new developments after the preliminary hearing to conclude that Defendant did not have a similar motive to develop Victim's testimony in the prior proceeding. The district court abused its discretion in concluding, contrary to *Brooks*, that Defendant did not have a similar motive to develop Victim's testimony at both the preliminary hearing and trial, for purposes of rule 804(b)(1)(B).

¶17 The City also contends that, in determining the admissibility of Victim's testimony, the district court erred by considering the letters Victim allegedly penned after her preliminary hearing testimony. The court concluded that under rule 804(b)(1)(B) and the Confrontation Clause the letters were the "biggest reason why I just did not feel that there was sufficient examination at the preliminary hearing on that issue to allow it to come in unchallenged." The City not only argues that the district court gave the letters undue weight in its analysis, but also that the district court should not have considered the letters at all in its rule 804 analysis because they "did not affect [Defendant's] motive or opportunity to cross-examine [Victim] at the preliminary hearing." The City contends that Utah courts

have found "intervening events," such as the letters at issue here, to be "uniformly" not dispositive, and thus it contends "the [district court] erred in finding them determinative." The City concedes that the letters may have some relevance to the district court's Confrontation Clause determination, but argues that the manner in which the district court considered the letters was error. We agree with the City; the district court erred in its analysis of the letters.[4]

¶18    The Utah Supreme Court has addressed the impact of intervening events on the admissibility of an unavailable witness's preliminary hearing testimony. In *State v. Menzies*, 889 P.2d 393 (Utah 1994), the defendant argued that the admission of an unavailable witness's preliminary hearing testimony would violate his Confrontation Clause rights[5] because, among other

---

4. Neither the City nor Defendant brief whether the opportunity to develop witness testimony under Utah Rule of Evidence 804(b)(1)(B) differs from the Confrontation Clause's requirement that a defendant be provided with an adequate opportunity to cross-examine the unavailable witness under *Crawford v. Washington*, 541 U.S. 36, 57 (2004). It appears that the district court applied both without drawing a distinction. We assume, without deciding, for purposes of this analysis that the opportunity to develop a witness's testimony under Utah Rule of Evidence 804(b)(1)(B) is coextensive with the Sixth Amendment's requirement that there be a prior opportunity for adequate cross-examination before the admission of an unavailable witness's preliminary hearing testimony.

5. We note that *Menzies* was decided before the United States Supreme Court decided *Crawford v. Washington*, 541 U.S. 36 (2004), and analyzed a different test under the Sixth Amendment's Confrontation Clause. Prior to *Crawford*, the Confrontation Clause jurisprudence focused on whether the witness was unavailable and her testimony contained "adequate

(continued…)

things, the witness's "mental competence was at issue and [the defendant] was not aware of this until after the preliminary hearing." *Id.* at 402–03. The defendant also contended that "defense counsel did not have the opportunity to examine [the witness] at the preliminary hearing regarding his subsequent convictions." *Id.* at 403. The supreme court rejected these arguments, noting the relevant consideration for Confrontation Clause purposes was the actual testimony developed at the preliminary hearing and not the potential testimony that could have been developed at trial. *Id.* The supreme court acknowledged the defendant's argument that the newly discovered information would have made cross-examination more effective. *Id.* But it reasoned, "The Confrontation Clause guarantees only an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Id.* (emphasis omitted) (citation and internal quotation marks omitted).

¶19 The supreme court in *Menzies* ultimately rejected the contention that the defendant's inability to examine the witness about the contested evidence automatically required the exclusion of the preliminary hearing testimony under the Confrontation Clause. *Id.* The court highlighted that the evidence raised by the defendant focused on the witness's credibility and

---

(…continued)
'indicia of reliability.'" *See Ohio v. Roberts*, 448 U.S. 56, 66 (1980), *overruled by Crawford*, 541 U.S. 36. In *Crawford*, the Supreme Court emphasized that "[w]here testimonial evidence is at issue . . . the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." 541 U.S. at 68. Under *Crawford*, "the only indicium of reliability sufficient to satisfy constitutional demands is the one the [Sixth Amendment] actually prescribes: confrontation." *Id.* at 69.

concluded that the Confrontation Clause required no further examination because the witness's credibility had been thoroughly explored at the preliminary hearing. *Id.*

¶20　Thus, *Menzies* outlines the analysis a district court should employ when presented with a claim that preliminary hearing testimony should not be admitted because of an inability to cross-examine a witness about events unknown to the defendant or occurring after that testimony. The *Menzies* court identified the topics the intervening events implicated and reviewed the preliminary hearing examination to gauge whether counsel had been afforded the opportunity to explore those topics during the preliminary hearing. *Id.* In *Menzies*, the intervening events raised issues concerning the witness's credibility. *Id.* Even after acknowledging that the new evidence "may have aided an attack" on the witness's credibility, the court examined the preliminary hearing testimony and concluded that "the issue [of credibility] was well-explored" at the preliminary hearing and thus the admission of the testimony would not infringe the defendant's Confrontation Clause rights. *Id.*

¶21　Here, the district court should have employed the same analysis. Although the district court's reasoning is not entirely clear, it appears that the court's analysis focused only on Defendant's inability, at the preliminary hearing, to specifically question Victim about the letters. In its analysis, the district court noted, "[I]t is the new information that [Victim] may be recanting her information and certainly, there was no information to that extent at the preliminary hearing . . . . [S]o there was no motive to be examining her as far as any recantation goes." In explaining the decision, the district court stated,

> [The letters were] the specific factual issue here that made me just simply feel uncomfortable, it was just almost one of those smell tests that the examination that was done at the preliminary

> hearing just did not rise to the level of opportunity or motive to make it fair to use that testimony as opposed to her being present here at trial.

¶22 The district court appears to have been primarily concerned with Defendant's inability to question Victim regarding her alleged recantation letters. Under *Menzies*'s reasoning, the district court's focus was misdirected. The ultimate question for the district court was whether Defendant had been afforded an adequate opportunity to cross-examine Victim at the preliminary hearing. The proper analysis under *Menzies* requires the court to evaluate Defendant's actual cross-examination of Victim to determine whether Defendant was afforded an opportunity to question Victim on the topics implicated by the letters. Because the letters spoke to Victim's credibility, the district court should have reviewed the preliminary hearing testimony to ensure that Defendant had been provided an adequate opportunity to explore Victim's credibility. If Defendant was afforded such an opportunity, the subsequent appearance of the letters does not retroactively negate that opportunity. *See id.* at 403. *Menzies* instructs that this is true even if the letters would have improved the effectiveness of Defendant's examination of Victim at the preliminary hearing. *See id.* The court erred by relying on the letters to exclude Victim's testimony without conducting this analysis.

¶23 We next must determine the impact of the district court's errors. If we conclude that the errors were harmless, we are not required to reverse the district court's determination. *Proctor v. Costco Wholesale Corp.*, 2013 UT App 226, ¶ 9, 311 P.3d 564. "Harmless error is defined . . . as an error that is sufficiently inconsequential that we conclude there is no reasonable likelihood that the error affected the outcome of the proceedings." *Covey v. Covey*, 2003 UT App 380, ¶ 21, 80 P.3d 553 (omission in original) (citation and internal quotation marks omitted). Put another way, "an error is harmful only if the likelihood of a different outcome is sufficiently high that it

undermines our confidence" in the result below. *Id.* (citation and internal quotation marks omitted).

¶24 Here, the district court identified a number of questions, unrelated to the letters, that Defendant had been prevented from asking at the preliminary hearing. For example, the district court found that Defendant's ability to inquire into potential affirmative defenses had been limited. It is unclear, however, if the district court concluded that these limitations alone prevented Defendant from having an opportunity to develop Victim's testimony through examination within the meaning of rule 804(b)(1)(B) or the Confrontation Clause. And the district court ultimately reasoned that the recantation letters constituted the "biggest reason" why it believed Defendant did not have an opportunity to cross-examine Victim. Because of the district court's express reliance on the letters and its failure to factor *Brooks*'s reasoning into its motive analysis, we conclude that its errors are harmful and we remand this case further consideration.

¶25 In sum, we conclude the district court erred in holding, contrary to the supreme court's reasoning in *Brooks*, that the differences between a preliminary hearing and trial dictate the conclusion that Defendant did not have the same motive to develop Victim's testimony at the preliminary hearing that he would at trial. We also conclude that the district court erred in the manner in which it considered the post-testimony letters, allegedly written by Victim. We vacate the court's order and remand for further consideration of the City's motion in limine consistent with the analysis set out in this opinion.

———————