The STATE of Utah, Plaintiff and Respondent,

v.

James Samuel BINGHAM, Defendant and Appellant.

No. 14971.

Supreme Court of Utah.

Jan. 31, 1978.

---

Don R. Strong, Springville, for defendant and appellant.

Robert B. Hansen, Atty. Gen., William W. Barrett, Asst. Atty. Gen., Salt Lake City, Notall T. Wootton, Utah County Atty., Provo, for plaintiff and respondent.

CROCKETT, Justice:

Defendant James Samuel Bingham appeals from his conviction by a jury of obstructing justice,[1] a second degree felony, for helping Gerald Paul Brown escape from the scene where the latter was involved in a shooting incident.

The pertinent statute is U.C.A., Section 76–8–306(2):

> An offense under this section *is a class B misdemeanor unless the actor knows that the offender committed a capital offense or a felony of the first degree, in which case it is a felony of the second degree.* [Emphasis added.]

The defendant contends that his crime cannot amount to a second degree felony under that statute because it is not shown: (1) that a first degree felony had been committed, nor (2) that he knew of such a fact when he provided transportation to the offender.

On August 28, 1976, about 1:00 a. m., the defendant and two passengers, Steven Losh and Gerald Paul Brown, were driving in American Fork looking for one Sonny Cordova who had been involved in a fight with Losh a few hours earlier. They spotted Cordova and one Cole Julien sitting in a parked pickup truck. Defendant stopped behind it; and he, Losh, and Brown got out and walked toward it. Defendant's testimony is that when he saw that Brown had a pistol in his hand he wanted no part of it and went back to his car. As he was doing so he heard two shots. (It later appears that Cordova had been shot in the head and killed and that Julien had been shot in the shoulder.) Brown and Losh returned to the defendant's car. Before the defendant drove away, he bent his rear license plate so it could not be read. The trio went to Brown's house, where they remained during the night and until they were apprehended and arrested later that day.

Defendant concedes that the facts shown could sustain his conviction for a class B misdemeanor. What he seeks is the invalidation of the felony aspect of his conviction. The foundation of that contention is the lack of proof that either Brown or Losh have been tried or convicted for any capital offense or first degree felony arising from the above-described incident, or that defendant knew that either of them had committed such an offense when he drove them from the scene.

The defendant's argument that before he could be convicted of this crime it must first appear that the offender whose escape he aids has been convicted of either a capital offense or a first degree felony strikes us as being unsound and impractical because it could defeat, rather than carry out, the purpose of the statute. There are a number of circumstances where the principal offender might not be convicted and the one who aided his escape could thus never be brought to justice. For example, in continuing his escape the offender might be killed, or he might make good his escape and never be apprehended, or for some other reason never prosecuted, or never convicted.

---

1. U.C.A. 76–8–306(1) provides that: "A person is guilty of an offense if, with intent to hinder, prevent, or delay the discovery, apprehension, . . . . of another for the commission of a crime, he: (c) Provides the offender . . . transportation . . . for avoiding discovery or apprehension."

■ It is our opinion that the statute should be applied in a reasonable and practical manner as to the guilt or innocence of the particular accused as shown by the circumstances; and that all the state should be required to prove is that he either knew, or should have known, that such a capital offense or felony in the first degree had been committed, and then violated the provisions of Section 76–8–306(1) by providing the offender with transportation for the purpose of avoiding his discovery or apprehension. The instructions of the court so recognized by telling the jury that before they could find the defendant guilty they must believe beyond a reasonable doubt the elements of the crime charged, including that the defendant knew that a first degree felony had been committed and voluntarily aided the offender to escape from the scene of the crime.

The question as to whether there is a basis in the evidence upon which a jury acting fairly and reasonably thereon could find the fact that the defendant knew or should have known that the offender (Gerald Paul Brown) had committed a first degree felony is a question of different character and more serious concern here. Under the circumstances, the only crime the offender could have committed which would constitute either a capital offense or a first degree felony would be a criminal homicide, constituting murder in either the first or second degree.[2]

We realize that it is our duty to assume that the jury believed those aspects of the evidence and drew whatever reasonable inferences arise therefrom that would support their verdict. A primary inculpatory fact is that this defendant appears to have willingly participated in what cannot be regarded as other than a reprehensible episode of vengeance. The most incriminating evidence as to his guilty knowledge in aiding escape from the scene of a crime, is the fact that before leaving he bent his rear license plate so it could not be read. However, that could be probative of an intent to hinder, or prevent the discovery or apprehension for the commission of other crimes[3] than a homicide.

■ It must be conceded that there is an absence of any direct proof that the defendant went near the cab of the pickup truck, or that he saw Brown shoot Cordova, or that they told him what had happened when they hurriedly returned to his car. All that was affirmatively shown was that he heard the shots, then assisted the offender in getting away from the scene. There are a number of possibilities as to what happened and why the firing of shots made Brown and Losh excited and desiring to get away in a hurry. Inasmuch as the facts shown are reasonably reconcilable with other possibilities, it is our conclusion that this evidence is not sufficient upon which it could fairly and justly be concluded beyond a reasonable doubt that the defendant knew or should have known that a homicide had been committed.

Consistent with what has been said above, we agree with the defendant's contention that the evidence does not justify his conviction of the more serious offense of "a felony in the second degree," but would only support the lesser offense of a class B misdemeanor under Sec. 76–8–306(2) quoted above. This reversal of his conviction of the higher degree of crime does not discharge the defendant. Inasmuch as his conviction is valid, except that it should have been of the lesser included offense, his conviction of the latter is affirmed and the case is remanded for such sentence as the district court deems appropriate and in conformity with the penalty provided by law for the lesser offense.[4] Accordingly, it is so ordered. No costs awarded.

---

2. As provided by Sections 76–5–202 and 76–5–203.

3. As provided by 76–8–306(1), supra note 1.

4. That such is the proper procedure see Sec. 77–42–3, U.C.A.1953; *State v. Justice*, 44 Utah 484, 141 P. 109; *State v. Swaggerty*, 15 Or. App. 343, 515 P.2d 952 (1973).

WILKINS and HALL, JJ., concur.

MAUGHAN, J., concurs in result.

ELLETT, Chief Justice (dissenting):

I dissent. The knowledge that the appellant had regarding the crime committed by his buddy, Gerald Paul Brown, was a question of fact to be determined by the jury. By their verdict under the instructions given by the court, the jurors determined that fact and I would affirm the judgment as rendered.