2015 UT App 152

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Plaintiff and Appellee,
*v.*
BENITA KENNEDY,
Defendant and Appellant.

Opinion
No. 20130229-CA
Filed June 18, 2015

Third District Court, Salt Lake Department
The Honorable Judith S.H. Atherton
No. 121900345

Scott S. Bell, Nicole G. Farrell, and Alan S. Mouritsen,
Attorneys for Appellant

Sean D. Reyes and Christopher D. Ballard, Attorneys
for Appellee

JUDGE JOHN A. PEARCE authored this Opinion, in which JUDGES
J. FREDERIC VOROS JR. and STEPHEN L. ROTH concurred.

PEARCE, Judge:

¶1     Defendant Benita Kennedy appeals her obstruction-of-justice conviction. She contends that the jury instructions were vague, that the court erred in rejecting her proposed mistake-of-fact instruction, and that she was deprived of her constitutional right to effective assistance of counsel when her trial counsel failed to object to the sufficiency of the evidence against her. We affirm.

## BACKGROUND

¶2     We recite the facts in the light most favorable to the jury's verdict, and we present conflicting evidence as necessary to

understand the issues raised on appeal. *State v. Black*, 2015 UT App 30, ¶ 2, 344 P.3d 644.

¶3     Eddie Garza hatched a plan to raise funds to throw his girlfriend's son a birthday party by robbing Hiram Torez, a drug dealer. Garza called Torez, asking to purchase drugs. They agreed to meet in a parking lot. To help pull off the robbery, Garza brought his girlfriend's stepfather (Christian Lizarzaburu), her brother (Larry Davis), and a friend (Anthony Corona).

¶4     Kennedy was with Torez at the home of Natalie Jo Irish when Torez received Garza's call. Before leaving for the meeting, Torez loaded his handgun. Kennedy drove Torez to the meeting point—a church parking lot—in Irish's SUV.

¶5     Garza's group arrived first, driving a sedan Garza's cousin's roommate had rented. Garza parked the sedan. Lizarzaburu and Davis exited the car and hid behind a nearby building. Garza remained in the driver's seat. Corona took the front passenger seat. When Kennedy arrived, she parked the SUV next to the sedan but facing the opposite direction, so that the drivers' doors faced each other about five feet apart.

¶6     Torez got out of the SUV and into the rear seat of the sedan. Garza, Torez, and Corona began to argue. Lizarzaburu and Davis ran to the sedan, opened both rear doors, and saw Garza and Torez fighting. Garza told Corona to shoot Torez. Corona shot Torez six times; one bullet grazed Garza's finger.

¶7     Garza, Corona, Lizarzaburu, and Davis then ran from the sedan. As Garza exited the sedan, Torez pleaded for help. Garza responded, "Sorry, homey." Corona ran to a nearby building.

¶8     Meanwhile, Kennedy remained in the driver's seat of the SUV, playing a game on her cell phone. Out of the corner of her eye, and through the tinted windows of the SUV, she saw flashes and realized that the situation had soured. She saw three

people—Garza, Lizarzaburu, and Davis—approaching the SUV. According to Lizarzaburu, Kennedy recognized the three, rolled down her window, called them by name, and told them to get in.[1] However, according to Irish, Kennedy later said she had not recognized them until after they had entered the SUV.

¶9    Irish also testified that Kennedy told her that, while driving away, Kennedy had exclaimed something to the effect of "Oh my God" and "[W]hat have you guys done?" Her passengers instructed her to pick up Corona. According to Lizarzaburu, Kennedy told Corona to "get in, get in, get in the car." After Corona got in, Kennedy asked the group if they had killed Torez. Corona replied that he had "dumped on [Torez] with the .22."

¶10    Kennedy dropped Corona, Lizarzaburu, and Davis off before taking Garza to Irish's house. Irish cleaned Garza's injured finger with hydrogen peroxide and drove him home. According to Garza's cousin, Kennedy suggested to Garza that he tell the cousin to report the rented sedan as stolen. Meanwhile, people near the scene of the shooting had heard the gunshots and called the police. When officers arrived, they discovered Torez's body inside the sedan.

¶11    Kennedy was eventually charged with one count of obstruction of justice. The charge was enhanced to a first-degree felony because the State alleged Kennedy had acted in concert with two or more people. At trial, Kennedy primarily argued that she could not have formed the intent to obstruct justice, because she did not know a crime had been committed. The State argued that, given Kennedy's proximity to the shooting, she must have known that a crime had occurred.

---

1. Kennedy told the investigating police officers that she had known some of her new passengers for years.

¶12    At the close of the evidentiary phase, Kennedy asked the court to give the jury a mistake-of-fact instruction. The gist of the proffered instruction was that "[a]n act committed under an ignorance or mistake of fact, which disproves the culpable mental state, is a defense to any prosecution for the crime." The court declined to give the instruction.

¶13    The court provided two jury instructions relevant to this appeal. The first (Instruction 15) was a general instruction concerning mental states:

> [T]he prosecution must prove that at the time the defendant acted, he/she did so with a particular mental state. For each offense, the law defines what kind of mental state the defendant had to have, if any.
>
> For the crime(s) charged in this case, the defendant must have acted "intentionally" or "knowingly" or recklessly. The prosecution must prove beyond a reasonable doubt that the defendant acted intentionally or knowingly or recklessly before the defendant can be found guilty of the crime charged.

¶14    Instruction 15 then defined each of the three mental states. For example, "[a] person engages in conduct intentionally or with intent or willfully with respect to the nature of his conduct or to a result of his conduct, when it is his conscious objective or desire to engage in the conduct or cause the result."

¶15    The second instruction at issue is Instruction 19. Unlike Instruction 15, Instruction 19 referred to the specific defendant and crime charged:

> Before you can convict the defendant, Benita Kennedy, of the offense of Obstruction Of Justice as charged in the Information, you must find from

all of the evidence and beyond a reasonable doubt all of the following elements of that offense:

1. That on or about the 10th day of December, 2011, in Salt Lake County, State of Utah, the defendant, Benita Kennedy;

2. With the intent to hinder, delay, or prevent the investigation, apprehension, prosecution, conviction, or punishment of any person regarding a criminal offense;

3. Did one or more of the following:
(a) altered, destroyed, concealed, or removed any item or other thing; or
(b) harbored or concealed a person; or
(c) provided a person with transportation, disguise, or other means of avoiding discovery or apprehension; or
(d) warned any person of impending discovery or apprehension; or
(e) provided false information regarding a suspect, a witness, the conduct constituting an offense, or any other material aspect of the investigation; and

4. She knew or should have known the criminal offense was either criminal homicide, aggravated robbery, or discharge of a firearm causing serious bodily injury.

¶16 The jury convicted Kennedy of obstruction of justice. Kennedy appeals.[2]

---

2. The parties filed four letters with the court after briefing was complete. *See generally* Utah R. App. P. 24(j) (governing letters of

(continued…)

ISSUES AND STANDARDS OF REVIEW

¶17 Kennedy first contends that the jury instructions failed to require that the jury find that she specifically intended to obstruct justice. We review a challenge to jury instructions for correctness. *State v. Featherhat*, 2011 UT App 154, ¶ 8, 257 P.3d 445.

¶18 Kennedy also contends that the trial court erred by failing to give the jury her proposed mistake-of-fact instruction. The issue of whether to instruct the jury on a theory that is supported by the evidence presents a legal question. *State v. Berriel*, 2013 UT 19, ¶ 10, 299 P.3d 1133. We review the trial court's resolution of that question for correctness. But whether the evidence introduced at trial supports a particular theory is "primarily a factual question," and we review the trial court's resolution of it for an abuse of discretion. *Id.* ¶¶ 9, 11.

¶19 Finally, Kennedy contends that the evidence against her was insufficient to sustain a conviction. We will reverse a guilty

---

(…continued)
supplemental authority). The State filed the second of these letters "to alert the Court to an oversight in its brief." The oversight consisted of an argument for affirmance based on Instruction 18. Kennedy then filed the third letter, correctly noting that "Rule 24(j) does not identify 'oversight' as a basis for filing a Rule 24(j) letter" and asking the court to consider a new argument from her "in the interest of fairness." The State responded in a fourth letter, urging us to ignore Kennedy's new argument because it was raised for the first time in a rule 24(j) letter. Parties are not permitted to use letters of supplemental authority as an opportunity to raise new arguments. *See Beynon v. St. George–Dixie Lodge No. 1743, Benevolent & Protective Order of Elks*, 854 P.2d 513, 519 (Utah 1993). Accordingly, we do not consider the merits of the new arguments raised in the second, third, and fourth "letters of supplemental authority."

verdict for insufficient evidence only when the evidence is so inconclusive or inherently improbable that reasonable minds must have entertained a reasonable doubt that the defendant committed the crimes of which he or she was convicted. *State v. Nielsen*, 2014 UT 10, ¶ 46, 326 P.3d 645.

ANALYSIS

I. Vague Jury Instructions

¶20    Kennedy contends that the jury instructions misled the jury into believing that they could convict her of obstruction of justice if they found that she acted knowingly or recklessly, rather than with the requisite mental state of acting intentionally. She argues that she preserved this claim for appeal by proposing a mistake-of-fact instruction. *See Wohnoutka v. Kelley*, 2014 UT App 154, ¶ 3, 330 P.3d 762 (explaining our requirement that issues be preserved for appeal).

¶21    An issue is preserved for appeal when it has been presented to the trial court in such a way that the trial court had the opportunity to rule on it. *Id.* ¶ 4. The appellant must present the legal basis for her claim to the trial court, not merely the underlying facts or a tangentially related claim. *See id.*

¶22    Kennedy's proposed instruction would have informed the jury that a defendant's mistake of fact could disprove the required mental state. The proposed instruction thus did not inform the trial court of Kennedy's apparent belief that Instruction 15 would mislead the jury into believing that a mental state of knowledge or recklessness was sufficient to convict Kennedy. As a result, the proposed instruction did not raise the legal basis of Kennedy's contention on appeal in such a way that the trial court would have had an opportunity to rule on it. *See id.* Her challenge to Instruction 15 is therefore unpreserved.

¶23    Kennedy also argues that two exceptions to our preservation rule apply. Specifically, she asserts that the trial court plainly erred by giving Instruction 15 and that her trial counsel's failure to object to it amounted to ineffective assistance of counsel. "The plain error standard of review requires an appellant to show the existence of a harmful error that should have been obvious to the district court." *State v. Waterfield*, 2014 UT App 67, ¶ 18, 322 P.3d 1194. "To succeed on a claim of ineffective assistance of counsel, a defendant must show that trial counsel's performance was deficient and that the defendant was prejudiced thereby." *State v. Hards*, 2015 UT App 42, ¶ 18, 345 P.3d 769. In this matter, neither the plain-error nor ineffective-assistance-of-counsel exceptions to the preservation rule are available to Kennedy if the jury was instructed properly. Accordingly, we consider whether the giving of Instruction 15 constitutes error.

¶24    To analyze Instruction 15, we must view it within the context of the jury instructions as a whole. *State v. Maestas*, 2012 UT 46, ¶ 148, 299 P.3d 892. If the jury instructions taken as a whole fairly instruct the jury on the law applicable to the case, the fact that one of the instructions, standing alone, "is not as accurate as it might have been" does not amount to reversible error. *State v. Lucero*, 866 P.2d 1, 3 (Utah Ct. App. 1993). Thus, we will affirm when the combined instructions fairly instruct the jury on the applicable law. *See Maestas*, 2012 UT 46, ¶ 148.

¶25    The relevant portion of Instruction 15 states, "For the crime(s) charged in this case, the defendant must have acted 'intentionally' or 'knowingly' or recklessly. The prosecution must prove beyond a reasonable doubt that the defendant acted intentionally or knowingly or recklessly before the defendant can be found guilty of the crime charged." We agree with Kennedy that, when read in isolation, these sentences could be read to instruct the jury that any of the three mental states could be sufficient to sustain a conviction. However, the instructions as a whole do not suffer from the same infirmity.

¶26 Unlike Instruction 15, which provides definitions that apply generally, Instruction 19 is specific to the crime of obstruction of justice. It refers to the jury as "you," lays out the elements of the crime, and includes Kennedy's name. It also provides the imperative command, "[Y]ou must find from all of the evidence and beyond a reasonable doubt all of the . . . elements" of obstruction of justice before "you can convict the defendant, Benita Kennedy." Instruction 19 defines the charge against Kennedy, providing in pertinent part that the jury could only convict Kennedy if it found that she had acted "*With the intent* to hinder, delay, or prevent the investigation, apprehension, prosecution, conviction, or punishment of any person regarding a criminal offense." (Emphasis added.)

¶27 Kennedy asserts that "Instruction 19's unadorned use of the term 'intent' did not correct Instruction 15's error because it did nothing to specify what kind of intent was required." She claims that "the jury could have reasonably believed—indeed should have believed, in light of Instruction 15—that Instruction 19's use of the term 'intent' included specific intent, knowledge, and recklessness." But Instruction 15 never uses the term "intent" as a category incorporating the three mental states. Rather, Instruction 15 explains that three culpable mental states exist in law—"intentionally or knowingly or recklessly"—and then defines each separately.[3]

---

3. We note that the Utah Supreme Court has "encourage[d] courts to take specific care to focus jury instruction language to apply narrowly to each applicable offense or element, rather than providing general statements which could be susceptible to misreading." *State v. Hutchings*, 2012 UT 50, ¶ 23 n.9, 285 P.3d 1183. This admonition does not absolve us of the responsibility to review a challenge to a particular jury instruction in light of the instructions as a whole. *See State v. Maestas*, 2012 UT 46, ¶ 148, 299 P.3d 892.

¶28 "Instructions should be read in their entire context and given meaning in accordance with the ordinary and usual import of the language as it would be understood by lay jurors." *Biswell v. Duncan*, 742 P.2d 80, 88 (Utah Ct. App. 1987). Reading the instructions in context and ascribing the ordinary meaning to their language, we cannot agree with Kennedy's assertion that the jury would have understood Instruction 19's use of "with the intent" to mean knowingly or recklessly.[4] Kennedy asks us to presume that the jury, seeking to understand the phrase "with the intent to hinder," would have skipped past Instruction 15's guidance that a person acts "with intent" "with respect to the nature of his conduct or to the result of his conduct, when it is his conscious objective or desire to engage in the conduct or cause the result" and that the jury would have focused instead on the definitions of reckless and knowing. Kennedy asks us to further believe that the jury would have then taken the unlikely step of interpreting Instruction 19's phrase "with the intent to hinder" to mean "recklessly hinder" or "knowingly hinder." We cannot presume that the jury deviated in this manner from the "ordinary and usual import of the language." *Biswell*, 742 P.2d at 88.

¶29 Moreover, other instructions signaled to the jury that Instruction 15 was not a list of mental states that could be applied to any crime but definitions of the mental states other instructions referenced. Instruction 18 explained that the defense of compulsion was not available if the defendant had "intentionally, knowingly, or recklessly placed herself in a

---

4. Kennedy argues in her reply brief that "Instruction 15 wrongly informed the jury that the mental states of knowledge and recklessness applied to a specific intent crime" and that "Instruction 15 still wrongly told the jury to apply knowledge and recklessness to a specific intent crime." This argument considers Instruction 15 in isolation. Because jury instructions must be read as a whole, Instruction 15 cannot fairly be read in the manner Kennedy urges.

situation where it was probable that she would be subjected to duress." Instruction 22 explained that criminal homicide murder (one of the offenses underlying the obstruction charge) meant inter alia "intentionally or knowingly causing the death of another." Likewise, Instruction 23 stated that felony discharge of a firearm requires a finding that the shooter fired the gun while "knowing or having reason to believe that any person" might be endangered thereby. And Instruction 24 explained that aggravated robbery (another underlying offense) occurs when an actor "intentionally or knowingly" uses force against another while committing a theft.

¶30   We conclude that Kennedy has not demonstrated the existence of an error, because the jury instructions when read together could not have misled the jury into believing that the lesser mental states of "knowingly" or "recklessly" were sufficient to convict Kennedy. She has therefore failed to show that the trial court plainly erred in instructing the jury or that trial counsel's failure to object to Instruction 15 constituted ineffective assistance of counsel.

## II. Mistake-of-Fact Instruction

¶31   Kennedy next contends that the trial court erred by refusing to give the jury her proposed mistake-of-fact instruction. She argues that she introduced substantial evidence in support of her claim that she mistakenly believed that no crime had been committed and that, absent the proposed instruction, the jury would not have understood that this belief negated the required mental state.

¶32   A defendant is entitled to have the jury instructed on the defense's theory of the case if there is any basis in the evidence to support that theory. *State v. Berriel*, 2013 UT 19, ¶ 12, 299 P.3d 1133. But the defense is not entitled to further instruction regarding the defense's theory of the case when the other instructions already fairly instruct the jury on the law applicable to that theory. *See State v. Lucero*, 866 P.2d 1, 3 (Utah Ct. App.

1993) (explaining that the fact that one instruction, considered alone, is not "as accurate as it might have been" is not reversible error so long as the instructions as a whole fairly instruct the jury on the applicable law). Accordingly, in order to demonstrate reversible error stemming from the trial court's refusal to give a proposed instruction, a defendant must show that the instructions that *were* given failed to fairly instruct the jury on the applicable law.

¶33    Kennedy first asserts that the trial court mistakenly believed that Instructions 15 and 19 correctly instructed the jury when it denied her proposed instruction. As we explain above, there was no error in those instructions; accordingly, we do not further address Kennedy's first assertion. However, Kennedy also asserts that her proposed instruction would have headed off possible misreadings of Instruction 19.

¶34    Kennedy points to the language of the fourth element of Instruction 19: "She knew or should have known the criminal offense was either criminal homicide, aggravated robbery, or discharge of a firearm causing serious bodily injury."[5] She argues that this language risked "allowing the jury to convict Kennedy if she 'should have known'—rather than actually knew—that an underlying crime had been committed." In other words, the second element required the jury to find Kennedy acted with intent to hinder the prosecution of a crime. The fourth

_____

5. This portion of the instruction was apparently intended to comport with *State v. Bingham*, 575 P.2d 197 (Utah 1978). *Bingham* concerned an earlier version of the obstruction-of-justice statute which provided that obstruction was a class B misdemeanor unless the defendant knew or should have known that a capital offense or a first-degree felony had been committed, in which case obstruction was a second-degree felony. *Id.* at 198. Here, as the State points out, the degree of the obstruction charge against Kennedy required that she knew or should have known that one of the listed first-degree felonies had been committed.

element required the jury to find Kennedy knew or should have known that the crime that had been committed was one the instruction listed; Kennedy argues this created confusion that her proposed mistake-of-fact instruction would have eliminated.

¶35 We disagree. We are constrained to read jury instructions as a whole and to give the language of the instructions their ordinary and usual import. *Biswell v. Duncan*, 742 P.2d 80, 88 (Utah Ct. App. 1987). When given its ordinary and usual meaning, the language of Instruction 19 required the jury to find that Kennedy acted *with the intent* to hinder the wheels of justice with regard to "any person regarding a criminal offense." It then adds, in a separately numbered paragraph, the additional requirement that Kennedy knew or should have known that the crime that person had committed was one of the three listed. To reach Kennedy's understanding of the instruction, the jury would have had to interpret "knew or should have known the criminal offense was [one of three listed]" to include "knew or should have known an offense occurred." We cannot presume that the jury would have made this mistake, because the ordinary and usual meaning of Instruction 19's language simply does not lend itself to such a misreading.

¶36 Kennedy's proposed mistake-of-fact instruction amounts to an alternative way of stating the defense's theory that Kennedy could not be convicted because she did not know a crime had been committed. Instruction 19 already instructed the jury that, to convict Kennedy of obstruction of justice, it had to find that she acted "[w]ith the intent to hinder, delay, or prevent the investigation, apprehension, prosecution, conviction, or punishment of any person regarding a criminal offense." The jury could not have concluded that Kennedy acted with that intent without finding that she actually knew the criminal conduct had occurred. Accordingly, Kennedy was not entitled to an essentially duplicative instruction. *See supra* ¶ 32. The trial court's refusal to give the proposed instruction was therefore neither a legal error nor an abuse of discretion, because the other instructions already fairly advised the jury about the significance

of Kennedy's mistake-of-fact claim. *See State v. Berriel*, 2013 UT 19, ¶¶ 8–9, 299 P.3d 1133; *State v. Lucero*, 866 P.2d 1, 3. In short, we conclude that while Kennedy was entitled to have the jury instructed regarding the import of her mistake-of-fact defense, Instruction 19 adequately did so. Consequently, the trial court did not abuse its discretion by declining to further instruct the jury on the same topic.[6]

### III. Sufficiency of the Evidence

¶37    Kennedy next contends that the evidence the State presented was insufficient to sustain her conviction for obstruction of justice. Specifically, she argues that there was no evidence that she knew beforehand that Torez would be robbed or killed and that the only evidence of her state of mind after the shooting was that she believed the shots were directed at her and that Torez was firing them. On this basis, she asserts that there was no evidence of her specific intent to obstruct the course of justice. The State responds that, on appeal, Kennedy "argues the evidence from only her point of view" and "fails to view it in the light most favorable to the jury's verdict."

¶38    Kennedy's trial counsel did not preserve this issue by moving for a directed verdict at trial. Kennedy therefore raises it as a matter of ineffective assistance of counsel. "To succeed on a

---

6. The State argues that Kennedy's trial counsel invited any error on this point by agreeing with the trial court that Instruction 19 was a correct statement of the law. *See State v. Geukgeuzian*, 2004 UT 16, ¶¶ 9–12, 86 P.3d 742 (explaining the invited-error doctrine). While counsel did concede that Instruction 19 *correctly* stated the law, he did not concede that Instruction 19 *fully* stated the law applicable to Kennedy's defense theory. Indeed, when the court asked whether he was withdrawing the defense's proposed instruction, counsel did not withdraw it and responded that he preferred that the court rule that Kennedy's proposed instruction would not be given to the jury.

claim of ineffective assistance of counsel, a defendant must show that trial counsel's performance was deficient and that the defendant was prejudiced thereby." *State v. Hards*, 2015 UT App 42, ¶ 18, 345 P.3d 769.

¶39     When considering an insufficiency-of-the-evidence claim, we review the evidence and all reasonable inferences in the light most favorable to the jury's verdict. *State v. Nielsen*, 2014 UT 10, ¶ 46, 326 P.3d 645. We may reverse Kennedy's conviction only if we determine that the evidence is so inconclusive or inherently improbable that reasonable minds must have entertained a reasonable doubt as to whether she committed the crime. *Id.*

¶40     Kennedy argues that there "was no evidence to dispute that [she] was nothing more than an indifferent bystander up until the gunshots were fired"; that "[e]ven after the shots were fired, the only evidence as to Kennedy's state of mind suggests Kennedy thought the shots were directed at her and that Torez was firing them"; and that "[e]ven after Corona told Kennedy he had shot Torez, Kennedy could still have believed that Torez was shot in self-defense." She highlights evidence that she had seen Torez loading his gun and that she had believed Torez was the one shooting.

¶41     In response, the State highlights several pieces of evidence it introduced at trial, arguing that the evidence supports a jury finding that during the drive away from the scene Kennedy knew a crime had been committed. For example, the State presented evidence that the parking lot was well-lit, that Kennedy's seat in the SUV afforded her a view down into the sedan, that the two vehicles were about five feet apart, and that the police officers who arrived at the scene within minutes of the shooting could "clearly" see from approximately ten feet away that Torez had suffered gunshot wounds. The State also presented evidence that Kennedy admitted to seeing a struggle inside the sedan and that after the shooting Kennedy exclaimed words to the effect of "Oh my God" and "[W]hat have you guys done?" And the State elicited testimony from Irish that Kennedy

told Irish that she had asked if Torez had been killed and that Corona had replied that he had "dumped on [him] with the .22."

¶42 When the evidence presented is conflicting or disputed, the trier of fact assesses both the credibility of witnesses and the weight to be given to particular evidence. *State v. Black*, 2015 UT App 30, ¶ 19, 344 P.3d 644. It is also the role of the trier of fact to then conclude which of the competing theories of the case it believes. *See State v. Cardona-Gueton*, 2012 UT App 336, ¶ 11, 291 P.3d 847. This is true even when the trier of fact is confronted with alternative hypotheses based on the same evidence. *See id.*

¶43 At trial, the State argued that the evidence showed beyond a reasonable doubt that Kennedy had committed all the elements necessary to be convicted of obstruction of justice. Kennedy argued that she drove away from the scene to avoid being "killed or shot." She claimed that she did not have the intent to "hinder, delay or prevent the investigation" and that her only intent was "to stay alive." The jury evidently determined that the evidence supported the State's hypothesis of intent rather than Kennedy's.

¶44 Kennedy's contention on appeal is essentially that the jury could not have properly convicted her, because the evidence presented did not exclude a reasonable alternative hypothesis of her intent. "[F]raming a claim as a reasonable-alternative-hypothesis claim presupposes that the alternative hypothesis is reasonable." *Cardona-Gueton*, 2012 UT App 336, ¶ 12. "But a finding that a defendant is guilty beyond a reasonable doubt is necessarily a finding that any alternative hypothesis of innocence presented at trial was *not* reasonable under the jury's view of the evidence." *Id.*

¶45 When the jury has reached a verdict based on one of the competing theories advanced by the parties, we will reverse that verdict only if the evidence is so insubstantial or inconclusive that the reasonable inferences drawn from it cannot preclude the alternative hypothesis presented by the defense. *Id.* ¶ 11. Here,

however, the evidence was not so insubstantial or inconclusive that the jury's inferences were unreasonable. The evidence was sufficient to support the jury's inferences that Kennedy knew a crime had been committed, that she knew or should have known her passengers had committed one of the specified crimes, and that she intended to hinder, prevent, or delay their arrest by driving them away from the scene. *See State v. Nielsen*, 2014 UT 10, ¶ 46, 326 P.3d 645; *Cardona-Gueton*, 2012 UT App 336, ¶ 12; *see also State v. James*, 819 P.2d 781, 789 (Utah 1991) ("It is well established that [mental state] can be proven by circumstantial evidence.").

¶46     Kennedy also draws parallels between her case and *State v. Bingham*, 575 P.2d 197 (Utah 1978). In *Bingham*, the Utah Supreme Court held that the evidence supporting an inference of intent on the part of an accused getaway driver (Bingham) was insufficient to sustain his conviction for first-degree-felony obstruction of justice. *Id.* at 199. To sustain a conviction, the State needed to prove that a first-degree felony had been committed and that Bingham knew of that fact when he drove the perpetrators away. *Id.* at 198. Bingham and his friends had stopped their car and approached a parked truck on foot. *Id.* After Bingham saw that one of his friends was carrying a pistol, he turned back towards the car because "he wanted no part of it." *Id.* As he was doing so, he heard two shots. *Id.* His two friends then returned to the car "excited and desiring to get away in a hurry." *Id.* at 198–99. Before driving them away from the scene, Bingham bent the car's license plate so that it could not be seen. *Id.* at 198. It later emerged that two men in the truck had been shot, one fatally.[7] *Id.* at 198.

---

7. At the time *State v. Bingham* was argued, neither of Bingham's friends had been tried. 575 P.2d 197, 198 (Utah 1978). Thus, it was not clear whether a first-degree felony had been committed (as required to sustain Bingham's first-degree-felony obstruction-of-justice conviction). One of those friends later

(continued…)

¶47    The supreme court noted that there was no "direct proof that the defendant went near the cab of the pickup truck, or that he saw [the shooting], or that [his friends] told him what had happened when they hurriedly returned to his car." *Id.* The court also noted that there were "a number of possibilities as to what happened and why the firing of shots made [Bingham's friends] excited and desiring to get away in a hurry." *Id.* at 199. Accordingly, the court concluded that the evidence was not sufficient to support a finding, beyond a reasonable doubt, that Bingham knew or should have known that a homicide had been committed. *Id.* The Utah Supreme Court therefore reversed Bingham's conviction and entered a conviction for class B misdemeanor obstruction of justice. *Id.*

¶48    *Bingham* differs from the case currently before us. In contrast to *Bingham*, the State presented evidence that Kennedy was within several feet of the sedan when Torez was killed inside it, that the murder scene was visible from outside the sedan, that Kennedy admitted seeing flashes out of the corner of her eye during the shooting, and that Kennedy's passengers informed her that a shooting had taken place. We cannot conclude that the evidence as a whole is so inconclusive or inherently improbable that reasonable minds must have entertained a reasonable doubt as to whether Kennedy had the intent to obstruct justice when she drove Garza, Corona, Lizarzaburu, and Davis away from the scene the crime. *See Nielsen*, 2014 UT 10, ¶ 46.

¶49    Moreover, in *Bingham*, the question before the Utah Supreme Court was whether Bingham knew or should have known the nature of his friends' crimes, not whether Bingham had intended to hinder, prevent, or delay their apprehension.

---

(…continued)
killed the other to prevent him from testifying about the events described in *Bingham*. *See State v. Brown*, 607 P.2d 261, 262, 267 (Utah 1980).

Indeed, Bingham conceded that the evidence was sufficient to sustain his conviction for misdemeanor obstruction of justice. *Bingham*, 575 P.2d at 198. He argued only that the evidence was insufficient to support his conviction for felony obstruction of justice because he was unaware that his friends had committed a first-degree felony. *Id.* Because *Bingham* began with a concession that the evidence was sufficient to prove at least one form of obstruction of justice, the case possesses little utility to address Kennedy's assertion that the evidence against her was insufficient to support a conviction for any degree of obstruction of justice.

¶50    For the foregoing reasons, a motion for directed verdict based on insufficiency of the evidence would have been fruitless. Failure to raise futile objections or motions does not constitute ineffective assistance of counsel. *See State v. Hanigan*, 2014 UT App 165, ¶ 4, 331 P.3d 1140; *see also State v. Kelley*, 2000 UT 41, ¶ 26, 1 P.3d 546. Kennedy has thus not established that the ineffective-assistance-of-counsel exception to the preservation rule applies.

CONCLUSION

¶51    Kennedy's challenge to Instruction 15 was not preserved, and neither the plain-error nor the ineffective-assistance-of-counsel exceptions apply. The law underlying Kennedy's defense theory was adequately explained by Instruction 19; consequently, the trial court had the discretion to refuse to give the jury her proposed mistake-of-fact instruction. Kennedy's challenge to the sufficiency of the evidence is unpreserved.

¶52    Affirmed.

————————