**2016 UT App 105**

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
ANH TUAN PHAM,
Appellant.

Opinion
No. 20140438-CA
Filed May 19, 2016

Third District Court, Salt Lake Department
The Honorable Katie Bernards-Goodman
No. 121903503

Michael J. Langford, Attorney for Appellant

Sean D. Reyes, Cherise M. Bacalski, and John J.
Nielsen, Attorneys for Appellee

JUDGE MICHELE M. CHRISTIANSEN authored this Opinion, in
which SENIOR JUDGE RUSSELL W. BENCH concurred.[1] JUDGE
J. FREDERIC VOROS JR. concurred, except as to Part II, in which he
concurred in the result, with opinion.

CHRISTIANSEN, Judge:

¶1     Defendant Anh Tuan Pham challenges his convictions. He argues that the admission of preliminary hearing testimony infringed upon his Confrontation Clause rights and that the State failed to produce sufficient evidence at trial to support one of the convictions. We affirm.

---

1. Senior Judge Russell W. Bench sat by special assignment as authorized by law. *See generally* Utah R. Jud. Admin. 11-201(6).

BACKGROUND

¶2    Defendant and his friend went to a convenience store to replenish their party supplies. The victim (Victim) and his girlfriend went to the same convenience store to get water for their baby. After they arrived, they saw Defendant "picking on" or "bullying" two younger men outside the store. Victim approached, and the younger men asked Victim for a ride. Defendant turned to Victim and asked him several times if he "wanted problems too." Victim responded each time that he did not. Nevertheless, the situation escalated. Defendant pulled out his gun and shot Victim; the bullet entered Victim's lower abdomen and exited through his scrotum, before lodging permanently in Victim's left leg.

¶3    Two police officers were across the street from the convenience store and, upon hearing the gunshot, ran to the store, yelling "stop now" and "police." Defendant and his friend fled in a van, later ditching it and stealing an SUV whose owner had left it running. Defendant was apprehended later that night and was charged with discharge of a firearm causing serious bodily injury, receiving or transferring a stolen vehicle, obstructing justice, and failing to stop or respond to an officer's signal.

¶4    Victim was taken to a hospital, where he stayed for three days. For two weeks, he could not walk without pain. Victim later returned to the hospital for further treatment, believing that the bullet had hit a nerve and caused problems in his foot.

¶5    Victim testified at Defendant's preliminary hearing, and Defendant cross-examined Victim without any limitation by the trial court. However, Victim moved to Mexico before the trial in this matter, and neither the United States Marshals Service nor the Mexican authorities were able to locate him. The State therefore filed a motion in limine seeking to admit Victim's preliminary hearing testimony. The trial court granted that motion over Defendant's objection.

¶6    At Defendant's jury trial, Victim's girlfriend, Defendant's friend, and the responding police officers testified for the State. Victim's preliminary hearing testimony was also read to the jury. Defendant testified in his own defense. The jury found Defendant guilty of all four charges, and Defendant timely appealed.

ISSUES AND STANDARDS OF REVIEW

¶7    Defendant contends that the trial court erred in allowing Victim's preliminary hearing testimony to be read at trial, because doing so violated his constitutional right to confrontation. We review a trial court's decision to admit testimony that may implicate the Confrontation Clause for correctness. *State v. Poole*, 2010 UT 25, ¶ 8, 232 P.3d 519.

¶8    Defendant also contends that the State did not produce sufficient evidence of Victim's injuries to support Defendant's conviction for discharge of a firearm causing serious bodily injury. We will reverse a jury's guilty verdict due to insufficiency of the evidence only when the evidence, viewed in the light most favorable to the verdict, is so inconclusive or inherently improbable that reasonable minds must have entertained a reasonable doubt that the defendant committed the crimes of which he or she was convicted. *See State v. Kennedy*, 2015 UT App 152, ¶ 19, 354 P.3d 775; *State v. Labrum*, 2014 UT App 5, ¶ 17, 318 P.3d 1151.

ANALYSIS

I. Confrontation Clause

¶9    Defendant first contends that the admission of Victim's preliminary hearing testimony violated his Confrontation Clause rights. "The Sixth Amendment to the United States Constitution states in relevant part, 'In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses

against him . . . .'" *State v. Marks*, 2011 UT App 262, ¶ 13 n.6, 262 P.3d 13 (ellipses in original) (quoting U.S. Const. amend. VI). "Where testimonial evidence is at issue . . . the Sixth Amendment demands what the common law required: unavailability [of the witness] and a prior opportunity for cross-examination." *Crawford v. Washington*, 541 U.S. 36, 68 (2004); *see also State v. Garrido*, 2013 UT App 245, ¶ 20, 314 P.3d 1014. *Cf. State v. Brooks*, 638 P.2d 537, 541 (Utah 1981) (noting, in a pre-*Crawford* case, that for purposes of a hearsay challenge, "cross-examination takes place at preliminary hearing and at trial under the same motive and interest" because defense counsel "acts in both situations in the interest of and motivated by establishing the innocence of [his or her] client"); *but see infra* ¶ 17 n.3.

¶10 Defendant does not contest that he was given an opportunity to cross-examine Victim at the preliminary hearing, but rather that "cross examination at a preliminary hearing is limited in scope and opportunity and therefore inadequate." Furthermore, Defendant "admits that he was not expressly limited in his cross-examination, but rather the nature of the preliminary hearing necessarily constricts confrontation." The essence of Defendant's argument is that preliminary hearings, as they are conducted under Utah law, are limited so as to preclude defendants from fully exercising their opportunity for cross-examination as guaranteed by the Confrontation Clause.

¶11 Though Defendant "requests that Utah reconsider its opinion" on this issue, he concedes that our appellate courts have determined that the opportunity to cross-examine a witness at a preliminary hearing can satisfy a defendant's right to confrontation at trial. Defendant cites to this court's opinion in *State v. Garrido*, 2013 UT App 245, 314 P.3d 1014, which addressed the use of a witness's preliminary hearing testimony when that witness was unavailable at trial. There, the defendant's trial counsel chose not to cross-examine a witness at the preliminary hearing, likely because her preliminary hearing testimony contradicted her earlier statements to police and thus was favorable to the defendant. *Id.* ¶ 5. When the witness largely

failed to appear at trial,[2] her preliminary hearing testimony was read to the jury. *Id.* ¶ 6. On appeal, the defendant argued that the admission of the witness's preliminary hearing testimony violated his Sixth Amendment right to confrontation. *Id.* ¶ 9. This court held that, under the facts of that case, "it was the opportunity to cross-examine [the now-unavailable witness], not the actual undertaking of cross-examination, that satisfied the requirements of *Crawford*." *Id.* ¶ 20.

¶12    We will overrule a decision previously made by this court only when we are "clearly convinced that the rule was originally erroneous or is no longer sound [due to] changing conditions and that more good than harm will come by departing from precedent." *State v. Tenorio*, 2007 UT App 92, ¶ 9, 156 P.3d 854 (citation and internal quotation marks omitted). Defendant does not explicitly indicate under which of these paths he seeks abrogation of *Garrido*. In any event, neither *Garrido* nor *Crawford* state a blanket rule that an opportunity to cross-examine a witness at a preliminary hearing will always, as a matter of law, satisfy a defendant's right to confrontation. Rather, we understand those cases to set forth the general proposition that it is *possible* for the cross-examination opportunity at a preliminary hearing to satisfy that right. It is in this light that we consider Defendant's claim that Utah preliminary hearings are structurally limited such that defendants are denied an opportunity to cross-examine witnesses in a manner that satisfies their Confrontation Clause rights.

¶13    Defendant states that "Confrontation requires an opportunity for full and unfettered cross-examination in order to discover and display credibility, consistency, and fact." He

---

2. "[J]ust as her testimony from the preliminary hearing was about to be read aloud [to the jury] by a stand-in, [the witness] appeared in the back of the courtroom, shouted that she refused to testify, and fled from the courtroom." *State v. Garrido*, 2013 UT App 245, ¶ 6, 314 P.3d 1014.

asserts that "Utah preliminary hearings provide an inadequate opportunity for Confrontation" because Utah's "preliminary hearings do not allow Judge's to make substantial credibility determinations, are heard in favor of the prosecution, whom do not have to eliminate alternative inferences, and do not allow a defendant to deeply explore issues of credibility or fact." Thus, according to Defendant, "testimony elicited during [Utah preliminary hearings] is not subject to adequate cross-examination."

¶14    Defendant refers us to a Colorado case, *People v. Fry*, 92 P.3d 970 (Colo. 2004), which was decided shortly after *Crawford*. The Colorado Supreme Court held that a defendant's right to confrontation was violated when the court admitted a deceased witness's preliminary hearing testimony at trial. *Fry*, 92 P.3d at 973, 981. In doing so, the court expressed concern that, because credibility is not an issue at a preliminary hearing, a defendant's cross-examination might not explore a witness's credibility. *Id.* at 977–78. The court explained that "allow[ing] extensive cross-examination by defense counsel so as to prevent any Confrontation Clause violations at trial if a witness were to become unavailable . . . would turn the preliminary hearing in every case into a much longer and more burdensome process for all parties involved." *Id.* at 978. The Colorado Supreme Court noted its belief that other states had elected to do exactly that and, consequently, had preliminary hearings that amounted to mini-trials in order to provide defendants a full cross-examination opportunity. *Id.* at 977. The court concluded that Colorado's "preliminary hearing [procedure] does not provide an adequate opportunity to cross-examine sufficient to satisfy the Confrontation Clause requirements," and it refused to "expand the scope of [Colorado] preliminary hearings in order to allow them to satisfy Confrontation Clause requirements." *Id.* at 978.

¶15    Defendant "insists that Utah's preliminary hearing standards are essentially the same as Colorado" but provides no comparative analysis of Colorado and Utah standards. We are

therefore unable to measure how closely Utah's preliminary hearing standards track those of Colorado.

¶16     However, Defendant does describe some facets of Utah's preliminary hearing process. For example, he notes that "'the bindover standard [of the preliminary hearing] is intended to leave the principal fact finding to the jury.'" (Alteration in original) (quoting *State v. Virgin*, 2006 UT 29, ¶ 21, 137 P.3d 787). Defendant also explains that the "'evidentiary threshold at [the preliminary hearing] is relatively low'" and "'a showing of "probable cause" entails only the presentation of "evidence sufficient to support a reasonable belief that the defendant committed the charged crime."'" (Alteration in original) (quoting *State v. Ramirez*, 2012 UT 59, ¶ 9, 289 P.3d 444). And Defendant reminds us that the magistrate's role in assessing credibility at a preliminary hearing is limited and that the magistrate is to take reasonable inferences in the prosecution's favor.

¶17     These statements, while true, do not limit the ability of a defendant to conduct a full cross-examination at a preliminary hearing. Although "principal fact finding" and determinations of credibility are left until trial, such considerations impose no obvious structural limitation on the scope or depth of cross-examination a defendant may conduct at a preliminary hearing. We are therefore unable to conclude that cross-examinations conducted within Utah's preliminary hearing framework can never satisfy a defendant's Sixth Amendment right to confrontation. *See, e.g., State v. Brooks*, 638 P.2d 537, 541–42 (Utah 1981) (holding that the defendants' opportunities for cross-examination during a preliminary hearing were constitutionally adequate for Confrontation Clause purposes, despite defense counsel being unaware of the witnesses' prior statements to police and thus being unable to cross-examine the witnesses about those statements, because defense counsel "apparently

advisedly and intentionally decided to refrain" from cross-examining the witnesses about the challenged topics).[3]

---

3. On the other hand, we are also not convinced that a preliminary hearing always provides the opportunity for cross-examination guaranteed by the Confrontation Clause. The State filed a letter of supplemental authority pursuant to rule 24(j) of the Utah Rules of Appellate Procedure, citing *State v. Brooks*, 638 P.2d 537, 541 (Utah 1981), for the proposition that "cross-examination takes place at preliminary hearing and at trial under the same motive and interest." We note that counsel's possession of the same motive and interest in conducting cross-examination does not necessarily mean counsel had the same opportunity to cross-examine. *See Garrido*, 2013 UT App 245, ¶ 20 ("We conclude that it was the opportunity to cross-examine . . . , not the actual undertaking of cross-examination, that satisfied the requirements of *Crawford*."). Indeed, the *Brooks* court separately considered whether "certain omissions in cross-examination at preliminary hearing precluded [the defendants] from an adequate exercise of the right to confrontation." *Brooks*, 638 P.2d at 541.

Moreover, thirteen years after *Brooks* was issued, the nature of preliminary hearings in Utah was changed by the passage of the Utah Victims' Rights Amendment. As relevant here, the Utah Constitution was amended to provide that "[w]here the defendant is otherwise entitled to a preliminary examination, the function of that examination is limited to determining whether probable cause exists" and to provide that "reliable hearsay evidence" is admissible at a preliminary hearing. *See* Utah Const. art. I, § 12. In light of these changes, the Utah Supreme Court overruled *State v. Anderson*, 612 P.2d 778 (Utah 1980), upon which the relevant portion of *Brooks* had partially relied. *See State v. Timmerman*, 2009 UT 58, ¶¶ 14–16, 218 P.3d 590. It is therefore unclear whether *Brooks*'s blanket statement that "cross-examination takes place at preliminary hearing and at trial under the same motive and interest" is still

(continued…)

¶18   We need not decide today whether the inverse is true. It is true that some courts have considered changes in a defendant's motive to cross-examine and court-imposed limitations on cross-examination as factors relevant to determining whether a defendant had a full opportunity to cross-examine a witness during a preliminary hearing. *See, e.g.*, *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986) (holding that "[by] cutting off all questioning about an event that the State conceded had taken place and that a jury might reasonably have found furnished the witness a motive for favoring the prosecution in his testimony, the court's ruling violated [the defendant's] rights secured by the Confrontation Clause"); *State v. Henderson*, 2006-NMCA-059, ¶ 19, 136 P.3d 1005 (concluding that a defendant's right to confrontation was not violated where he had the same motive to cross-examine the witness at the preliminary hearing and enjoyed "an unrestricted right to cross-examine" the witness); *State v. Stuart*, 2005 WI 47, ¶ 38, 695 N.W.2d 259 (vacating a defendant's conviction where a court "did not allow [the defendant] to cross-examine [a witness] at the preliminary hearing about the effect the pending charges had on his decision to cooperate"). In the case before us, however, Defendant does not allege that his motivation to cross-examine Victim changed between the preliminary hearing and trial. Nor does he claim that the trial court limited his cross-examination in any way. Under the circumstances of this case, we cannot conclude that Defendant was prevented from exercising his Confrontation Clause right to, in Defendant's words, "unfettered cross-examination in order to discover and display credibility, consistency, and fact."[4]

---

(…continued)
true insofar as Confrontation Clause rights are concerned. *See Brooks*, 638 P.2d at 541.

4. On appeal, Defendant does not identify any shortcomings in the cross-examination actually conducted at his preliminary

(continued…)

¶19    Defendant has not demonstrated that Utah's preliminary hearing procedures limit cross-examination of a witness in such a way that a defendant's Confrontation Clause rights are necessarily violated if that witness's testimony is read at trial due to the witness's unavailability. Defendant does not claim that the specific circumstances of his preliminary hearing resulted in such a limitation. Consequently, we hold that the court did not err in allowing Victim's preliminary hearing testimony to be read to the jury at trial.

## II. Serious Bodily Injury

¶20    Defendant next contends that the State did not provide sufficient evidence for the jury to conclude that Victim suffered serious bodily injury. Specifically, he argues that there was no evidence that the gunshot created a substantial risk of death.

¶21    Defendant was convicted of the first degree felony of unlawful discharge of a firearm causing serious bodily injury. *See* Utah Code Ann. § 76-10-508.1 (LexisNexis 2012). The Utah Criminal Code defines serious bodily injury as "bodily injury that creates or causes serious permanent disfigurement, protracted loss or impairment of the function of any bodily member or organ, or creates a substantial risk of death." *Id.* § 76-1-601(11). We consider only the third criterion—substantial risk of death.[5]

---

(…continued)
hearing. Rather, Defendant simply urges us to hold, as a matter of law, that Utah preliminary hearings never provide defendants with sufficient opportunity to cross-examine witnesses so as to satisfy the Confrontation Clause.

5. The State argues that the jury could also have found that the evidence of Victim's injuries satisfied the "protracted loss or impairment of the function of any bodily member or organ"

(continued…)

¶22 "[I]t is within the province of the jury to consider the means and manner by which the victim's injuries were inflicted along with the attendant circumstances in determining whether a defendant caused serious bodily injury." *State v. Bloomfield*, 2003 UT App 3, ¶ 18, 63 P.3d 110 (citation and internal quotation marks omitted). In addressing an insufficiency-of-the-evidence claim, we review the evidence and all reasonable inferences drawn therefrom in the light most favorable to the jury's verdict. *State v. Kennedy*, 2015 UT App 152, ¶ 39, 354 P.3d 775.

¶23 Defendant admits that Victim's preliminary hearing testimony described his being shot in the leg, bleeding, feeling dizzy, spending three days in a hospital, having trouble walking for about two weeks, and experiencing considerable pain during those two weeks. Defendant neglects to mention that Victim also testified that the bullet struck and lodged permanently in his leg only after first passing through Victim's abdomen and scrotum. *See State v. Mitchell*, 2013 UT App 289, ¶ 31, 318 P.3d 238 (noting that marshaling the evidence is "prudent tactical advice" because, generally, "[a]n appellant cannot demonstrate that the evidence supporting a factual finding falls short without giving a candid account of that evidence.").

¶24 Defendant does not refer us to any case in which an appellate court has determined that evidence of a gunshot wound was insufficient to support a jury's finding. Rather, he cites a single case in which a defendant beat his victim into unconsciousness, stomped on the victim's head, and ripped out the victim's eyebrow ring. *Bloomfield*, 2003 UT App 3, ¶ 3. There, this court held that the evidence presented to the jury was

_____

(…continued)
prong, on the ground that two weeks was a protracted length of time. *See* Utah Code Ann. § 76-1-601(11) (LexisNexis 2012). Because we conclude that the evidence was sufficient to support a jury finding of "substantial risk of death," we need not address that argument.

sufficient to support the jury's finding that the defendant had caused serious bodily injury. *Id.* ¶ 18.

¶25    Defendant baldly asserts that his case "simply does not present facts" like those in *Bloomfield* and that the jury's finding of serious bodily injury here therefore must have been unreasonable. But he does not argue that *Bloomfield* marks the boundary between bodily injury and serious bodily injury. Thus, the fact that the evidence of a severe beating in that case *was sufficient* to sustain the jury's finding of serious bodily injury has no bearing on Defendant's claim that the evidence of a shooting in his case *was not sufficient* for the jury to find that he caused serious bodily injury.

¶26    In any event, Defendant fails to cite any authority suggesting that gunshot wounds do not or cannot create a substantial risk of death. On the contrary, a cursory search reveals several cases in which gunshot wounds to the leg have been fatal. *See, e.g.*, *Hawkins v. Lafler*, No. 11-cv-11250, 2015 WL 2185970, at *1 (E.D. Mich. May 11, 2015) (after being shot in the leg, the victim ran away to take refuge in a house, where he died from blood loss); *Ostling v. City of Bainbridge Island*, 872 F. Supp. 2d 1117, 1121 (W.D. Wash. 2012) (a man was shot in the leg and then bled to death); *People v. Payton*, No. 257402, 2006 WL 548917, at *1–2 (Mich. Ct. App. Mar. 7, 2006) (per curiam) (noting that a defendant shot a victim in the leg, that "the natural tendency of such behavior is to cause death or great bodily harm," and that the victim did in fact die). Even if the wound is not directly fatal, a gunshot to any part of the body can cause infections that lead to death. *See, e.g.*, *People v. Fedora*, 65 N.E.2d 447, 455–56 (Ill. 1946) (two doctors' opinions that a victim's death had been caused by peritonitis resulting from a gunshot wound were "sufficient evidence" to support a jury finding that the shooter was responsible for causing death); *State v. Davis*, 295 S.W. 96, 97–98 (Mo. 1927) (testimony from two doctors that a victim's death had been caused by peritonitis resulting from being shot in the abdomen by the defendant approximately two months before death was "amply sufficient to support the

verdict" of manslaughter); *see also, e.g., State v. Hamilton*, 192 S.E.2d 24, 25 (N.C. Ct. App. 1972) (considering the admissibility of a doctor's opinion that a victim died from "pneumonia [that] was secondary to the peritonitis which was secondary to the gunshot wound."); *State v. Nix*, No. C-030696, 2004 WL 2315035, at paras. 3, 16 (Ohio Ct. App. Oct. 15, 2004) (victim died in hospital, after being shot in the abdomen, from "acute ischemic colitis with peritonitis" or "dying bowel due to inadequate vascular supply due to injur[ed] vessels due to gunshot wound" (internal quotation marks omitted)); *Adams v. State*, 202 S.W.2d 933, 934 (Tex. Crim. App. 1947) (noting that a decedent's death from peritonitis was traceable to a gunshot wound caused by the defendant, who was therefore guilty of capital murder). Because being shot can lead to death, it is not inherently unreasonable for a jury to find that a particular shooting resulted in serious bodily injury by creating a substantial risk of death.

¶27 We will vacate a defendant's conviction after a jury trial due to the insufficiency of the evidence only if we determine that the evidence is so inconclusive or inherently improbable that reasonable minds must have entertained a reasonable doubt as to whether the defendant committed the crime of which he or she was convicted. *State v. Kennedy*, 2015 UT App 152, ¶ 39, 354 P.3d 775. Defendant has not demonstrated that a reasonable jury, after hearing evidence that Defendant fired a bullet that penetrated Victim's abdomen, scrotum, and leg, causing Victim to be hospitalized for three days, must have entertained a reasonable doubt as to whether Defendant created a substantial risk of death.

CONCLUSION

¶28 The trial court did not err by admitting Victim's preliminary hearing testimony to be read to the jury after determining that Victim was unavailable, because Defendant had a full opportunity to cross-examine Victim at the preliminary hearing. Defendant has failed to show that the

evidence was insufficient to support a jury finding that Victim suffered serious bodily injury.

¶29    Affirmed.

_____

VOROS, Judge (concurring in part and concurring in the result in part):

¶30    I concur in the majority opinion except as to Part II, in which I concur in the result only.

¶31    I would reject Pham's sufficiency challenge on marshaling grounds. True, our marshaling rule no longer requires the appellant to present "every scrap of competent evidence" supporting the verdict. *See State v. Nielsen*, 2014 UT 10, ¶ 43, 326 P.3d 645. But an appellant still bears the burden of persuasion. *Id.* ¶ 42. And to persuade a court that an injury was not so serious as to satisfy the statutory definition of "serious bodily injury" an appellant must at minimum accurately describe the injury.

¶32    Here, Pham argues that Victim did not suffer serious bodily injury without acknowledging all the bodily injury Victim suffered. Pham states that Victim "testified that the bullet struck his leg." In fact, the record shows that the bullet produced three wounds: it entered Victim's body above his penis on the right side, passed through his scrotum on his left side, and lodged in his leg. The first two wounds are not mere "scraps" of evidence; they are additional evidence that Victim's injury qualified as serious. Without acknowledging them, Pham cannot show that the evidence of serious bodily injury fell short.

_____